**Donald G. SMITH, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 90–1049.

United States Court of Appeals, Sixth Circuit.

Submitted Nov. 8, 1990.

Decided March 8, 1991.

Rehearing and Rehearing En Banc Denied April 22, 1991.

**1472**

Donald G. Smith, Cuyahoga Falls, Ohio, pro se.

Peter K. Scott, I.R.S., Office of Chief Counsel, Gary R. Allen, Acting Chief, Kenneth L. Greene, John A. Dudeck, U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., for C.I.R.

Before KEITH, KENNEDY, and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Petitioner appeals from the tax court's order denying his motion to vacate a default judgment granting the deficiency amount and fraud penalties. For the reasons stated below, the decision of the tax court is AFFIRMED.

## I.

On April 15, 1976, the Commissioner of Internal Revenue ("Commissioner" or "respondent") sent a statutory notice of deficiency to petitioner, Donald G. Smith ("petitioner"), seeking deficiency taxes and fraud penalties based on alleged unreported income for the tax years 1972 and 1973. Petitioner filed a request for redetermination with the tax court on June 17, 1976. At the time he filed his petition, petitioner was incarcerated in the Federal Penitentia-

ry in Lewisburg, Pennsylvania. As his reason for disagreement with the notice of deficiency the petitioner stated that: "I am at Lewisburg penitentiary and am presently sueing [sic] the I.R.S. in Cleveland, Ohio concerning this investigation. I state my taxes are correct to my knowledge. I am requesting appointed counsel." Petitioner did not allege any specific facts in support of his contention. Prior to incarceration, petitioner had resided in Ohio.

The Commissioner filed an answer denying the substantive allegations of the petition and further alleging that part of the underpayments of tax required to be shown on petitioner's income tax return for the years in question were due to fraud. In support of the fraud allegation, the answer to the petition listed taxable income derived from various sources in the taxable years 1972 and 1973, including receipts from narcotics trafficking, wagering, odd jobs, real property, and wages and unemployment compensation. The Commissioner's answer also set forth in detail the facts upon which he based his analysis of petitioner's net worth, including petitioner's beginning cash on hand, specific assets acquired and liabilities incurred by petitioner during the relevant taxable years, specific expenditures by petitioner for personal living expenses during the years in issue, and specific nontaxable receipts of petitioner during the years in question. The Commissioner determined an increase in petitioner's net worth for taxable year 1972 in the amount of $13,181.87 and an increase in petitioner's net worth for taxable year 1973 in the amount of $19,782.48.

Petitioner thereafter filed a reply entitled "Rebuttal to Respondent's Answer," which only generally disputed the allegations contained in the Commissioner's answer. The petitioner also filed a "Response to Respondent's First Request for Admissions" on April 13, 1978, even though the Commissioner did not file with the Court any request for admissions.[1] That document also

---

1. The Commissioner states in his brief that he served a request for admissions on the petitioner. The United States Tax Court's docket sheet contains no entry that this document was filed with the court. Rule 90 of the Rules of Practice and Procedure of the United States Tax Court provides that a party may without leave of the court, serve on any other party a written request for admissions, but that the party making the request "shall serve a copy thereof on the other

only generally disputed the allegations in the Commissioner's answer. On July 1, 1977, the Commissioner filed a motion to transfer the place of trial from Philadelphia to Cleveland, which the petitioner opposed. That motion was denied at a hearing conducted on August 14, 1977. On March 5, 1981, petitioner's address was changed on all the court records to reflect his transfer to the Federal Correctional Institute, Oxford, Wisconsin.

No further action was taken until June 2, 1987, when a Notice of Trial and Pretrial Order was mailed to petitioner setting the case for trial in Philadelphia, Pennsylvania on November 2, 1987 at 10 a.m. The notice also advised the parties that failure to appear at the time and/or failure to cooperate in the preparation of an agreement on all facts and documents as to which there should be no disagreement might result in dismissal of the case and entry of decision against the defaulting party. The notice was mailed to the Oxford, Wisconsin address. It was not returned to the Court as undeliverable and there is no other indication in the tax court's records that petitioner did not receive this notice.

On September 2, 1987, September 16, 1987, and October 13, 1987, the Commissioner sent petitioner letters to the Oxford, Wisconsin address requesting him to contact the Commissioner for the purpose of preparing the case for trial. The September 16, 1987 letter was forwarded to an Akron, Ohio address petitioner used prior to his Oxford, Wisconsin address. All three letters were eventually returned to the Commissioner as undeliverable.

When the Commissioner attempted to verify petitioner's address through computer records, it discovered that petitioner had used the Akron, Ohio address for his 1985 and 1986 tax returns. In October of 1987, the Commissioner learned from the Federal Inmate Locator Service that petitioner had been released on parole from a halfway house in Ohio on May 9, 1984. The Commissioner sent another letter along with a copy of respondent's trial memorandum on October 26, 1987 to the Akron, Ohio address. Petitioner did not reply.

Petitioner failed to appear for trial on November 2, 1989. Thereafter, upon motion of the Commissioner, the tax court entered a default against the petitioner under Rule 123(a)[2] of the Rules of Practice and Procedure of the United States Tax Court ("Tax Ct.R.") for the full amount of the deficiency and fraud penalties, based solely upon the well-pleaded allegations in the Commissioner's answer. Specifically, the tax court held that petitioner had failed to "otherwise proceed" under Tax Ct.R. 123(a) by failing to communicate with the court, by failing to comply with the pretrial order regarding preparation of a stipulation of facts as required under Tax Ct.R. 91(a), and by failing to appear at trial. In granting the fraud penalties, the court in a reviewed opinion,[3] expressly overruled its earlier decision in *Miller–Pocahontas Coal Co. v. Commissioner*, 21 B.T.A. 1360 (1931), which held that a taxpayer cannot be held liable for an addition to tax for fraud unless the Commissioner introduces into the record evidence of fraud sufficient to carry the Commissioner's burden of proof.[4]

party, and shall file the original with proof of service with the Court." A copy of the Commissioner's requests for admissions is contained in the Joint Appendix.

**2.** The full text of Tax Ct.R. 123(a) is set out at page 1476, n. 10 of this opinion.

**3.** The tax court consists of 19 members. Pursuant to statutory authority, the chief judge of the tax court may divide the tax court into divisions of one or more judges. 26 U.S.C. § 7444(c), Tax Ct.R. 3(a). After a division hears and makes a determination upon a proceeding before it, it is required to "make a report of any such determi-

nation which constitutes its final disposition of the proceeding." 26 U.S.C. § 7460(a). The chief judge, within 30 days of the filing of the report, may determine that the report shall be reviewed by the whole court with or without a hearing. The full court will then make its own report. 26 U.S.C. § 7460(b). If this is the case, the divisional report is not a part of the record on appeal. *Id. See* 9 J. Moore, B. Ward, J. Lucas, *Moore's Federal Practice*, ¶ 213.02[4].

**4.** The court's opinion is found at 91 T.C. 1049 (1988). The majority opinion reflects the views of eleven judges. Judge Whalen concurred. He agreed with the majority's view that the Com-

The tax court entered its decision against petitioner for the deficiencies in and addition to tax on December 27, 1988. Before that decision became final, *see* 26 U.S.C. § 7481(a)(1), petitioner timely filed a motion to set aside the default pursuant to Tax Ct.R. 123(c),[5] claiming that he had first become aware of the opinion granting the Commissioner's motion to hold petitioner in default and enter a decision against him when he read a newspaper article discussing the decision on January 4, 1989. That motion was denied on April 17, 1989.[6] This appeal followed.

## II.

■ The United States Courts of Appeals have exclusive jurisdiction to review decisions of the tax court, except as provided in 28 U.S.C. § 1254, "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a); *Headrick v. Commissioner*, 918 F.2d 1263, (6th Cir.1990); *Threlkeld v. Commissioner*, 848 F.2d 81, 83 (6th Cir.1988). Thus, a tax court's findings of fact can be disturbed only if they are clearly erroneous; questions of law are subject to *de novo* review. *Estate of Shafer v. Commissioner*, 749 F.2d 1216, 1218 (6th Cir.1984) (citation omitted); *see also Headrick, supra,* (questions of law reviewed *de novo* ). Upon such review, the courts of appeals "shall have power to affirm or, if the decision of the Tax Court is not in accordance with law, to modify or to reverse the decision of the Tax Court, with or without remanding

the case for a rehearing, as justice may require." 26 U.S.C. § 7482(c)(1). Petitioner's appeal is properly before this court, since his legal residence for purposes of venue on appeal is Ohio, the state where he lived prior to incarceration and after being paroled and that state in which he still owns property. *See* 26 U.S.C. § 7482(b).

### A.

■ The first issue presented for consideration is whether the tax court properly entered a default judgment granting fraud penalties, based exclusively on the allegations in the Commissioner's answer, where the taxpayer filed a reply to the Commissioner's answer and a response to requests for admissions, but subsequently failed to participate in preparing a stipulation of facts and to appear for trial.

■ In this case the Commissioner issued a notice of deficiency to the petitioner in which he asserted that there were deficiencies in the petitioner's income taxes for 1972 and 1973. The Commissioner's deficiency determinations are presumed correct. The taxpayer therefore bears the burden of proving otherwise. *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623 (1935); *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Davis v. Commissioner*, 674 F.2d 553, 553 (6th Cir.1982); Tax Ct.R. 142(a). The Commissioner also issued a 50 percent penalty for fraud with respect to the deficiencies pursuant to 26 U.S.C.

---

missioner should not be required to put on evidence to sustain his burden of proof when he has affirmatively pleaded facts sufficient to sustain fraud, but disagreed that it was necessary to overrule *Miller–Pocahontas Coal,* on the grounds that the case could be distinguished factually. One judge concurred. Judge Cohen dissented, urging that *Miller–Pocahontas Coal* should not be overruled and thus the Commissioner had failed to satisfy his burden of proof because no evidence of fraud had been formally introduced into the record. Judge Cohen's opinion was joined by four judges. Judge Shields also wrote a dissenting opinion which agreed with the dissenting opinion of Judge Cohen, but urged that the taxpayer's failure to communicate with the court, his failure to par-

ticipate in the preparation of his case for trial and his failure to appear at trial were sufficient grounds for dismissing his case as a sanction under Tax Ct.R. 104(a). Four judges joined. Thus, the concurring opinion reflects the views of two judges, and the two dissenting opinions reflect the views of a total of five judges.

**5.** Tax Ct.R. 123(c) provides: "Setting Aside Default or Dismissal: For reasons deemed sufficient by the Court and upon motion expeditiously made, the Court may set aside a default or dismissal or the decision rendered thereon."

**6.** The Tax Court's memorandum opinion denying the petitioner's motion to set aside default is published at 57 T.C.M. 131 (CCH) (1989).

§ 6653(b).[7] In contrast with the deficiency assessment, the burden of proof as to the fraud penalty is on the Commissioner, who must prove the fraud by "clear and convincing" evidence. 26 U.S.C. § 7454; Tax Ct.R. 142(a);[8] *Traficant v. Commissioner,* 884 F.2d 258, 264 (6th Cir.1989). The addition to tax for fraud is a civil provision, enacted "primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering v. Mitchell,* 303 U.S. 391, 401, 58 S.Ct. 630, 634, 82 L.Ed. 917 (1938) (footnote omitted).

In *Miller–Pocahontas Coal, supra,* the Board of Tax Appeals[9] held that a taxpayer who filed a petition attacking both the deficiency and the penalty assessments against him, but who failed to appear for trial could not be held liable for an addition to tax for fraud without the formal introduction into the record of such evidence sufficient to support the respondent's burden of proof. The Board refused to assess fraud penalties against the petitioner, since the Commissioner offered no proof of fraud to sustain the penalty. Absent the tax court's decision in the instant case to overturn its earlier decision, *Miller–Pocahontas Coal* would require us to vacate the tax court's assessment of fraud penalties against the petitioner since here the Commissioner likewise did not introduce into the record evidence of fraud. Because this issue presents a question of law, we review it *de novo. Headrick, supra; Shafer, supra.*

It is well established that courts have inherent power to dismiss and/or enter a default when a party disobeys a court order or otherwise interferes with the efficient administration of justice. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *Harris v. Callwood,* 844 F.2d 1254, 1255 (6th Cir.1988); *accord Coston v. Detroit Edison Co.,* 789 F.2d 377, 379 (6th Cir. 1986); *see also Roland v. Salem Contract Carriers, Inc.,* 811 F.2d 1175, 1177–78 (7th Cir.1987) ("[t]he power to sanction through dismissal is essential to the district courts' ability to manage efficiently their heavy caseloads and thus protect the interest of all litigants"). Also, pursuant to the authority granted it by Congress, the tax court has enacted the "Rules of Practice and Procedure of the United States Tax Court Rules." 26 U.S.C. § 7453; *see also,* 26 U.S.C. foll. § 7453; 60 T.C. 1057 (1973); *accord, Louisville Builders Supply Co. v. Commissioner,* 294 F.2d 333, 339 (6th Cir. 1961) (tax court's powers are limited to those given by specific acts of Congress and by court's own rules adopted pursuant to congressional authorization plus such inherent powers as may be in a quasi judicial body). The Rules govern practice and procedure in all cases and proceedings in the tax court, Tax Ct.R 1(a), and are to be construed "to secure the just, speedy and inexpensive determination of every case." Tax Ct.R. 1(b). The tax court rules are modeled after the Federal Rules of Civil Procedure. *See Introduction to Rules of Practice and Procedure of the United*

---

7. The addition to tax for fraud in effect at the time petitioner was charged provided for a penalty equal to 50 percent of the portion of the underpayment attributable to the fraud. The 50 percent fraud penalty was increased to 75 percent in the 1986 Amendments to the statute. Pub.L. 99–514, § 1503(a). The current section provides for an addition to tax equal to 75 percent of the portion of underpayment due to fraud. 26 U.S.C. § 6653(b) (1989 & Supp.1990).

8. As noted by the *Smith* majority, the "clear and convincing" standard of proof does not appear in 26 U.S.C. § 7454(a); nor does the legislative history of that section or its predecessor discuss any such standard. H.Rept. 1337, 83d Cong., 2d Sess. A 433 (1954); S.Rept. 1662, 83d Cong., 2d Sess. 612 (1954); S.Rept. 960 (Conf.), 70th

Cong., 1st Sess. 38 (1928), 1939–1 C.B. (Part 2) 409, 436; H.Rept. 1882 (Cong.), 70th Cong., 1st Sess. 21 (1928), 1939–1 C.B. (Part 2) 444, 452. The standard is one of judicial creation. It first appears in *Rickard v. Commissioner,* 15 B.T.A. 316, 317 (1929), without separate discussion. *See Smith v. Commissioner,* 91 T.C. at 1053 n. 3. The "clear and convincing" standard is contained in Tax Ct.R. 142(b), however.

9. In 1924, Congress created the Board of Tax Appeals, an independent agency of the Executive Branch, with jurisdiction to entertain petitions for review of deficiency assessments. In 1942, the Board of Tax Appeals was renamed the Tax Court of the United States. 9 J. Moore, B. Ward, J. Lucas, *Moore's Federal Practice* ¶ 213.02[1] (2d ed 1990).

*States Tax Court*, 60 T.C. 1057, 1057 (1973) (the rules "draw upon the Federal Rules of Civil Procedure to the extent that they were thought to be suitably adaptable to the special nature of litigation in the Tax Court").

■ Tax Ct.R. 123(b), which is derived from Fed.R.Civ.P. 41(b), provides that the court may dismiss a case and enter a decision against the petitioner "[f]or failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court...." Tax Ct.R. 123(b). Thus, because the petitioner bears the burden of proof with respect to the deficiency assessment, dismissal of the petition is an appropriate sanction for his noncompliance. *See Bosurgi v. Commissioner*, 87 T.C. 1403, 1407 n. 3 (1986).

The rule which immediately concerns us is Tax Ct.R. 123(a),[10] which provides that the tax court may in its discretion hold a party in default for failure to "plead or otherwise proceed as provided by these Rules [the Tax Court Rules] or as required by the Court," and that the court may enter a decision against the defaulting party or impose other sanctions, such as those provided in Rule 104. Tax Ct.R. 123(a). Rule 123(a) is derived from Rules 55(a) and (b) of the Federal Rules of Civil Procedure. *See* Note to 123(a), 60 T.C. 1057, 1129 (1973); *Bosurgi*, 87 T.C. 1403. By analogy to Fed.R.Civ.P. 55(a), the party who bears the burden of proof may move for entry of default. *Bosurgi*, 87 T.C. at 1407. Thus, the tax court acted correctly insofar as it employed Rule 123(a) to sanction petitioner's non-cooperation with respect to the fraud penalty, since it is the Commissioner

who bears the burden of proof on that issue.

■ As one ground for overruling *Miller–Pocahontas Coal,* the *Smith* majority held that its adoption of Tax Ct.R. 123(a), effective January 1, 1974, implicitly overruled its earlier decision to the extent *Miller–Pocahontas Coal* adopted a *per se* rule requiring that evidence of fraud be formally introduced in every case. In support, the court pointed to the language of Rule 123(a) which provides that the court *"may, in its discretion,* conduct hearings to ascertain whether a default had been committed." Tax Ct.R. 123(a) (emphasis added). We believe that from the tax court's inherent and statutory authority to regulate its docket and adopt rules of procedure flows the ability to effectively overrule a prior decision that has become outmoded and serves as an impediment to the court's mission of securing just, speedy and inexpensive determination of all cases before it. This is especially true when the rule had no counterpart in prior tax court rules and therefore could not have been a factor in the earlier court's determination. *See* Note to Rule 123(a), 60 T.C. at 1130.

Secondly, as the tax court stated, the rule of *Miller–Pocahontas Coal* has been nullified in practice by other tax court procedures. As noted above, the tax court has already relieved the Commissioner of the burden of putting on his case for the addition to tax for fraud in actions involving the use of deemed admissions (Rules 37(c), 90(c), or 91(f)), and sanctions (Rule 104(c)(3)).[11] As the majority in the case below noted:

---

**10.** Tax Ct.R. 123(a) provides: **(a) Default:**

When any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, he may be held in default by the Court either on motion of another party or on the initiative of the Court. Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104) as the Court may deem appropriate. The Court may, in its discretion, conduct hearings to ascertain whether a default has been committed, to determine the decision to

be entered or the sanctions to be imposed, or to ascertain the truth of any matter.

**11.** In cases where the taxpayer's failure to follow procedure has resulted in deemed admissions under 37(c) (failure to reply), 90(f) (failure to respond to requests for deemed admissions) or 91(f) (failure to make stipulations for trial), the tax court has relieved the Commissioner of the burden of putting on his case for the addition to tax for fraud. *See, e.g., Marshall v. Commissioner,* 85 T.C. 267 (1985) (summary judgment as to deficiency and fraud penalty brought deemed admissions under Rule 90(c) where taxpayer failed to respond to requests for

Because the taxpayer's failure to respond (after failing to cooperate with respondent in the pretrial process) occurs no later in the proceedings than the taxpayer's failure to appear at trial in a case in which the Commissioner makes no such attempt, the only reason to treat one failure to respond differently from the other is that one provides "proof" of fraud through deemed admissions under our Rules while the other, theoretically, does not.... [W]e think that distinction to be superannuated and without relevance in present-day proceedings in this Court.

*Smith*, 91 T.C. at 1055–56. Since the effect of a default is to establish the well-pleaded facts of the non-defaulting party, the establishment of such facts through a default is no different than establishing such facts through deemed admissions. *Id.* at 1052. *See Bosurgi, supra*, (where tax court entered default without a hearing against taxpayer even though the Commissioner had burden of proof on the issue of transferee liability). Thus, as aptly stated by the tax court below, when a taxpayer fails to cooperate with the Commissioner and the tax court it is "patently absurd" to:

"recite a litany of 'deemed' admissions, 'find' facts not disputed, and then 'decide' the case as best we can, issuing a written opinion in every case. Often we have a 'trial', the respondent putting on his case without the presence or participation of the taxpayer. These little one-act pantomimes complete with briefs and an opinion are a charade in which we can no longer indulge. The enormous growth in our caseload requires that we recognize the inconvenience these useless and futile histrionics impose on other citizens having business before this Court."

*Smith*, 91 T.C. at 1058 (citing *Doncaster*, 77 T.C. at 344–45 (Wilbur, J., concurring) (citation omitted)). *See also Bosurgi, supra*, 87 T.C. at 1408 ("[i]f a taxpayer does not think well enough of his case to defend it where the Government has the burden of proof, this Court should default him. To hold a trial in a case abandoned by the taxpayer is at best an indulgence of archaic manners and at worst an insult to the taxpayers who have a rightful claim on this Court's time").

Third, as held by the tax court, changes in the revenue code have undercut the rationale of *Miller–Pocahontas Coal*. In *Miller–Pocahontas Coal*, the Board of Tax Appeals declined to grant the fraud penalty in the default context because it determined that the revenue acts made a clear distinction between a deficiency in tax and a penalty, and that section 906(c) of the Revenue Act of 1924, 43 Stat. 253, 336, as amended by the Revenue Acts of 1926 and 1928, "provide[d] that a dismissal shall require an affirmance of the deficiency only."

admissions); *Doncaster v. Commissioner*, 77 T.C. 334 (1981) and *Gilday v. Commissioner*, 62 T.C. 260 (1974) (default judgment granting deficiency and fraud penalties through deemed admissions under Tax Ct.R. 37(c) where taxpayer failed to reply to Commissioner's answers or appear at trial).

Further, Tax Ct.R. 104 contains sanctions for failure to obey certain discovery orders. For example, pursuant to Rule 104(c)(3), the tax court may order that matters regarding which the order was made be taken to be established, enter a dismissal or a default judgment as a sanction for failure to obey discovery orders entered with respect to Rule 71 (interrogatories), 72 (production of documents and things), 73 (examination by transferees), 74, 81, 82, 83 and 84 (depositions) or 90 (requests for admission). With respect to such violations the tax court has also relieved the Commissioner of his burden and entered judgments as to the deficiency and fraud penalty. *See, e.g., Steinbrecher v. Commissioner*, 712 F.2d 195, 197 (5th Cir. 1983) (upholding tax court's grant of default judgment as to deficiency amounts and fraud penalties as a sanction under Tax Ct.R. 104(c)(3) for taxpayers' failure to comply with discovery, including a Rule 72 order to produce documents); *McCoy v. Commissioner*, 76 T.C. 1027 (1981) *aff'd*, 696 F.2d 1234 (9th Cir.1983) (default sanction granting fraud penalties under Tax Ct.R. 104(c)(3) where taxpayer violated order to answer interrogatories and produce documents); *Rechtzigel v. Commissioner*, 79 T.C. 132 (1982), *aff'd*, 703 F.2d 1063 (8th Cir.1983) (default judgment granting deficiency and fraud penalty amounts as Rule 104(c)(3) sanction for refusal to comply with order to produce documents); *Marcus v. Commissioner*, 70 T.C. 562 (1978), *aff'd*, 621 F.2d 439 (5th Cir.1980) (default sanction granting fraud penalties under Rule 104(c)(3) where taxpayer failed to answer interrogatories or respond to requests for admissions).

21 B.T.A. at 1361. The Board further observed that a fraud penalty is not part of the deficiency because the burden of proof as to the fraud issue is on the Commissioner, not the taxpayer. However, as currently pointed out by the *Smith* majority, under present code, section 6662 [12] of the IRC (formerly 6659) provides that "additions to the tax, additional amounts, and penalties ... shall be assessed, collected, and paid in the same manner as taxes." 26 U.S.C. § 6662. Moreover, the legislative history reflects that the provision is clearly intended to cover deficiency procedures, including proceedings in the tax court. *See* H.Rept. 1337, 83d Cong., 2d Sess. A420 (1954); S.Rept. 1622, 83d Cong., 2d Sess. 595 (1954). *See also* H.Rept. 1217, 86th Cong., 2d Sess. 2 (1960), 1960–1 C.B. 843. Thus, we agree with the tax court's conclusion that the "deficiency" rationale of *Miller–Pocahontas Coal* is no longer valid. 91 T.C. at 1054.

 Judge Shields argues in his dissent that Rule 123(a) does not allow for entry of default after the taxpayer files a reply (as was the case here), based on an analogy to Fed.R.Civ.P. 55(a); [13] in that the phrase "otherwise defend" of Rule 55(a) refers to defenses and objections available to a defendant by motion prior to filing an answer.[14] *See Smith*, 91 T.C. at 1062–66. We conclude, however, that the language "plead or otherwise proceed" as used in Rule 123(a) is sufficiently distinct from the language "plead or otherwise defend" as

used in Fed.R.Civ.P. 55(a) such that a failure to participate in the pretrial proceedings or to appear at trial may constitute a failure to "proceed" for purposes of Rule 123(a). In any event, the Federal Rules of Civil Procedure, while persuasive, are not binding on the tax court. *Commissioner v. Licavoli*, 252 F.2d 268 (6th Cir.1958); *Lasky v. Commissioner*, 235 F.2d 97 (9th Cir.1956) *aff'd* 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598 (1957); *Starr v. Commissioner*, 226 F.2d 721 (7th Cir.1955), *cert. denied*, 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 859 (1956); *Katz v. Commissioner*, 188 F.2d 957 (2d Cir.1951). Furthermore, this court has held that with regard to the tax court's interpretation and application of its own procedural rules, an abuse of discretion standard is to be applied. *Estate of Shafer, supra*, 749 F.2d at 1216. We find no abuse of that discretion in the instant case.

Finally, we note that in order to safeguard against the automatic imposition of the fraud addition, the court admonished that, "the Commissioner's pleadings must allege specific facts sufficient to sustain a finding of fraud before he will be entitled to a decision that includes an addition to tax for fraud upon the failure of a taxpayer to appear for trial." *Smith*, 91 T.C. at 1058. Here, the tax court found that the Commissioner's specific allegations, once taken to be true by petitioner's default, were sufficient to carry his burden of prov-

---

**12.** 26 U.S.C. § 6662 was the applicable rule in effect at the time this case was decided by the tax court. Pursuant to Pub.L. 101–239, Title VII § 7721(a), December 19, 1989, 803 Stat. 2397, section 6662 was omitted in the general revision of accuracy related penalties. It is now found in substantially similar form at 26 U.S.C. § 6665 (1990).

**13.** Rule 55(a) of the Federal Rules of Civil Procedure provides in part: "When a party against whom a judgment for affirmative relief is sought has failed *to plead or otherwise defend* as provided by those rules ... the clerk shall enter the parties default (emphasis added)." Fed.R. Civ.P. 55(a).

**14.** Judge Shields quoted the following passage from C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, sec. 2682 at 409–10 (2d ed 1983) (footnotes omitted):

The words "otherwise defend" refer to the interposition of various challenges to such matters as service, venue, and the sufficiency of the prior pleading, any of which might prevent a default if pursued in the absence of a responsive pleading.
*Id.* But as acknowledged by Judge Shields, there is authority for treating "failure to defend" as used in Rule 55(a) as the reverse side of "failure to prosecute" as used in Fed.R.Civ.P. 41. *See Au Bon Pain Corp. v. Artect Inc.*, 653 F.2d 61 (2d Cir.1981) (the court found that a defendant's nonappearance at a deposition, dismissal of counsel, vague and unresponsive answers to interrogatories, and failure to appear at trial were sufficient to support a finding that he had "failed to plead or otherwise defend" under rule 55).

ing that the deficiencies resulted from the taxpayer's fraud. This court has articulated a number of factors which indicate fraud under 26 U.S.C. § 6653(b); including: (1) the taxpayer's failure to file returns; (2) failure to report income over an extended period of time; (3) taxpayer's failure to furnish the government with access to his records; (4) failure to keep adequate books and records; and (5) evidence of taxpayer's experience and knowledge, especially of tax laws. *Solomon v. Commissioner*, 732 F.2d 1459, 1461 (6th Cir.1984) (citations omitted); *See also United States v. Walton*, 909 F.2d 915, 926 (6th Cir.1990). The tax court first evaluated the Commissioner's net worth analysis, as set forth in his answer, under the standards enunciated in *Holland v. United States*, 348 U.S. 121, 132–38, 75 S.Ct. 127, 133–37, 99 L.Ed. 150 (1954), which requires the Commissioner to establish, with reasonable certainty, an opening net worth, and that he has either conducted a reasonable investigation of leads which would negate possible sources of non-taxable income or establish a likely source of unreported taxable income. *See also Brooks v. Commissioner*, 82 T.C. 413, 431–32 (1984) *aff'd*, 772 F.2d 910 (9th Cir. 1985). The tax court concluded that the Commissioner's net worth analysis as set forth in his answer established a pattern during the taxable years at issue, and that the pattern of acquiring substantial assets while reporting nominal income on his returns was evidence of fraud and the court further noted that petitioner's failure to keep records was also a badge of fraud. After careful review of the record, we find that the tax court's factual findings were not "clearly erroneous" and that it did not err in finding the existence of fraud on the part of the petitioner.

 We are not unmindful of the heavy burden placed upon the tax court by doctrine of stare decisis and that any decision to depart from the doctrine requires "special justification." *Arizona v. Rumsey*, 467 U.S. 203, 212, 104 S.Ct. 2305, 2311, 81 L.Ed.2d 164 (1984). On the other hand, stare decisis is not "an inexorable command," and the Supreme Court has indicated that a departure may be justified

when a court feels obliged "to bring its opinions into agreement with experience and with facts newly ascertained." *Vasquez v. Hillery*, 474 U.S. 254, 266, 106 S.Ct. 617, 624–25, 88 L.Ed.2d 598 (1986) (quoting *Burnet v. Coronado Oil and Gas Co.*, 285 U.S. 393, 412, 52 S.Ct. 443, 625, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). Further, we know of no authority which prevents a court, sitting *en banc*, from overruling one of its prior decisions when it has determined that the rule is outdated and an impediment to legal process. We therefore find that the court has provided adequate justification for its decision to formally overrule *Miller–Pocahontas Coal* since the rationale underlying the decision has been undermined by subsequent procedural and statutory developments, and because continued adherence to the rule interferes with efficient administration of the tax court.

### B.

 Petitioner's second argument on appeal is that the tax court erred in denying his timely motion to set aside the default under Tax Ct.R. 123(c), which provides that a default may be set aside "for reasons deemed sufficient by the court and upon motion expeditiously made." This court has indicated that a "glaring abuse" of discretion is not required for reversal of the harsh sanction of default. *United Coin Meter v. Seaboard Coastline R.R.*, 705 F.2d 839, 846 (6th Cir.1983) (citation omitted).

 We have articulated the following factors to be considered in determining whether to set aside default: 1) whether the non-defaulting party will be prejudiced; 2) whether the defendant has a meritorious defense; and 3) whether the culpable conduct of the defendant led to the default. *United Coin Meter, supra*, 705 F.2d at 845 (citations omitted). *See also Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 194–95 (6th Cir.1986); *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 399 (6th Cir.), *cert. denied*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); *Berthel-*

*sen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990), *reh'g denied* (Sept. 10, 1990). In *Shepard Claims Serv., supra*, we further explained:

> "Where the defaulting party and counsel have not shown disrespect for the court, or have given evidence of respect for the court's process by their haste in acting to set aside the default, the courts have been inclined toward leniency.... Clearly, however, the court may refuse to set aside a default, where the defaulting party has no meritorious defense, where the default is due to willfulness or bad faith, or where the defendant offers no excuse at all for the default." (Footnotes omitted).
>
> We do not believe it appropriate to attempt a precise definition of "culpable conduct." Where the party in default satisfies the first two requirements for relief and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings.

796 F.2d at 194–95 (quoting J. Moore, 6 *Moore's Federal Practice* 55.01[2] at 55–61, 62 (1985 ed)).

Here the tax court found that there was no indication in the record that petitioner had acted willfully or in bad faith with respect to the default. It did find however that the petitioner failed to exhibit that he had a meritorious defense. We have stated that:

> [A] defense is sufficient if it contains even a hint of a suggestion which, proven at trial, would constitute a complete defense. The key consideration is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.

*INVST Financial Group, Inc.*, 815 F.2d at 399 (internal citations and quotations omitted). The record reflects the tax court's findings that petitioner offered "no explanation or reason for the asserted difference between his net worth computation and respondent's" and "no suggestion that

he has any evidence to support his computation." *See Smith*, 57 T.C.M. at 132. Indeed, the only material allegation in the record is defendant's assertion in his reply to the Commissioner's answer, that his net worth was approximately one third of the amount asserted by respondent. Petitioner's general assertion regarding his net worth is tantamount to a general denial and, as such, did not amount to even a "hint of a suggestion" that petitioner could dispute the allegations of the government's answer. *See INVST Financial Group, supra*, 815 F.2d at 399. We therefore find that the tax court did not abuse its discretion concluding that petitioner had failed to present a meritorious defense.

As a second ground for denying petitioner's motion to set aside default, the tax court found that petitioner had failed to advance a credible explanation for his disregard of judicial proceedings. The tax court rejected petitioner's assertion that Commissioner knew or could have known of petitioner's correct address and was therefore responsible for petitioner's failure to receive notice of the setting of his case for trial. It observed that it was incumbent on petitioner to notify the court of a change in his address pursuant to Tax.Ct.R. 21(b)(4) and that as petitioner had selected that forum to review his tax liability, he was bound by its Rules. 57 T.C.M. at 132. We agree with the tax court's conclusion that petitioner's failure to keep the Court advised of his address over a seven year period clearly violated its Rules and displayed "a reckless disregard for the petition he filed in the instant case and for the judicial proceedings *he* instituted by filing *his* petition." *Id.* (citing *Shepard Claims Serv.*, 796 F.2d at 194) (emphasis in tax court opinion).

Finally, the tax court concluded that prejudice would result to the respondent, the court, and the other taxpayers in reviewing litigation. In sum, we find no abuse of discretion in the tax court's denial of petitioner's motion to set aside the default judgment. Accordingly, for all the foregoing reasons we AFFIRM the decision of the tax court.

KEITH, Circuit Judge, dissenting.

Since I believe that, under the circumstances presented by this case, it was an abuse of discretion to deny a timely motion to set aside a default judgment that resulted in penalties for fraud, I respectfully dissent. As the majority noted, this Court has indicated that a "glaring abuse" of discretion is not required for reversal of the harsh sanction of default. *United Coin Meter v. Seaboard Coastline R.R.,* 705 F.2d 839, 846 (6th Cir.1983). That case articulated the following factors to be considered in determining whether to set aside default: 1) whether the culpable conduct of the defendant led to the default; 2) whether the nondefaulting party will be prejudiced; and 3) whether the defendant has a meritorious defense. *Id.* at 845. This court in *Shepard Claims Serv. Inc. v. William Darrah & Assoc.,* 796 F.2d 190 (6th Cir.1986), noted that "[w]here the defaulting party and counsel have not shown disrespect for the court, or have given evidence of respect for the court's process by their haste in acting to set aside the default, the courts have been inclined toward leniency." *Id.* at 194.

As the majority recognizes, the tax court in the instant case found that there was no indication in the record that petitioner had acted willfully or in bad faith with respect to the default. He moved to vacate the default judgment immediately upon learning from a newspaper article of the entry of such judgment against him. The decision by the tax court was entered on December 21, 1988, the article appeared on January 4, 1989, and the petitioner filed a motion to vacate on January 13, 1989.

While the taxpayer has the responsibility to keep the court informed of his or her address and to prosecute the case, from the point of view of this pro se taxpayer, he had answered the most recent questions of the Commissioner concerning his taxes and had not had anything further requested from him. Procedurally, the taxpayer is the petitioner in a request for the court to determine the deficiency, and therefore has the obligation to prosecute the case. This petition, however, is the taxpayer's response to the Commissioner pursuing him for a deficiency in tax. It is thus understandable that this pro se taxpayer would fail to understand that he is responsible for prosecuting a case. In fact, the taxpayer must show that he does not owe the amount alleged, rather than the Commissioner being responsible to pursue the claim of money owed. The Commissioner let the case sit dormant for nine years. There were no further requests for payment or information from the taxpayer. He explains that he mistakenly understood the issue had been resolved in 1978. Internal Revenue Service agents apparently told the taxpayer in a 1978 meeting that they were not going to pursue the claim since it was deemed uncollectible based on taxpayer's inability to pay. There admittedly is some culpability in the failure to inform the court of a change of address and to prosecute the case, but in view of the surrounding facts, the pro se taxpayer, who was imprisoned for much of the time at issue, acted reasonably.

The second factor is prejudice to the government. The majority indicates no finding on this issue other than to note that the tax court had concluded that there would be prejudice. The tax court merely held that the same factors which appeared in *Brooks v. Commissioner,* 82 T.C. 413, 429 (1984), applied to the current case. In fact, *Brooks* is readily distinguishable. In *Brooks,* the court noted that respondent's agents had spent many years developing and preparing the case and witnesses had traveled substantial distances to be present. The case had been twice set for trial and continued at petitioner's request.

There is no evidence in the instant case of resources lost as a result of the delay. Mere delay is not sufficient basis for establishing prejudice. The party must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion. *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.,* 815 F.2d 391, 398 (6th Cir.), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). None of these detriments has been presented in the instant case.

Furthermore, the circumstances of the instant case are far different from the facts of *Brooks*, where the taxpayer had been dragging out the case by repeatedly seeking continuances. In the instant case, the government also had left the case dormant for nine years without any further contact with the pro se petitioner. The docket indicates no action was taken after Smith filed a response to the Commissioner's request for admissions in 1978 until June 2, 1987. There is absolutely no demonstration that there is any more prejudice to the respondent resulting from delay in this case than in any other.

The last element of the test for vacating default is the demonstration of a meritorious defense. All the taxpayer must show, however, is a "hint of a suggestion" creating "some possibility that the outcome of trial will be contrary to the result achieved by the default." *INVST Fin. Group, Inc.*, 815 F.2d at 399. The majority finds that this requirement was met since there was no evidence submitted to support the taxpayer's computation. This does not apply, however, to the fraud charges. The government has the burden of demonstrating the taxpayer's fraud by clear and convincing evidence. Tax Ct.R. 142(b). This burden was only met in the instant case by the fact that the allegations of the Commissioner were not disputed. There is no evidence in the record to indicate that the *Commissioner* would be able to meet *his* burden on the merits, if the merits were reached in a hearing. Based on these facts, I conclude that there was a hint of a suggestion that, were a hearing held, the taxpayer might be successful on the merits. Thus this last element to vacate default is clearly met.

The taxpayer demonstrated all three elements necessary to vacate a default judgment. Even if one of the elements is weak, this is not fatal to the motion. This court held in *Berthelsen v. Kane*, 907 F.2d 617 (6th Cir.1990) (per curiam), that a default

judgment may be vacated even if fewer than all three factors weigh in favor of the moving party. The *Berthelsen* court held that the judgment must be set aside despite the moving party's culpable behavior. *Id.* at 622. The culpable conduct in *Berthelsen* was much more severe, actively evading service of process. Here, any culpability resulted from the defendant's alleged negligence in failing to prosecute his case.

For the foregoing reasons, I would reverse the denial of the motion to set aside the default judgment.