DARRYL S. TIPTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tipton v. Commissioner
Docket No. 13490-91
United States Tax Court
T.C. Memo 1994-624; 1994 Tax Ct. Memo LEXIS 633; 68 T.C.M. (CCH) 1478; December 20, 1994, Filed *633 An appropriate order will be issued, and decision will be entered for respondent. For respondent: Michael W. Bitner. FAY
FAY
MEMORANDUM OPINION FAY, Judge: This case was called at the Court's trial calendar in Chicago, Illinois, on January 31, 1994. Petitioner did not appear. At that time, respondent filed a Motion to Dismiss for Lack of Prosecution. Subsequently, on March 25, 1994, respondent filed a Motion for Entry of Default Judgment. In her motions, respondent seeks an order of decision reflecting deficiencies in income tax, and additions to tax, for the 1983 through 1985 taxable years, as determined in the notice of deficiency. By statutory notice dated April 12, 1991, respondent determined deficiencies in and additions to petitioner's Federal income taxes in the following amounts: Additions to Tax
Sec. Sec.
Year
Deficiency
6653(b)
6661
1983
$  4,139
$  2,069.50
--  1984
78,477
39,238.50
$ 19,619.25
1985
9,091
4,545.50
2,272.75
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The issues *634 for decision are: (1) Whether petitioner's case should be dismissed for failure to properly prosecute, or in the alternative, whether a default judgment should be entered against petitioner with respect to the deficiencies and additions to tax [1] for which petitioner bears the burden of proof. We hold that the entry of a default judgment in this case is appropriate. (2) Whether petitioner is liable for the addition to tax for fraud pursuant to section 6653(b)(1) and (2). We hold that he is. Petitioner's Criminal History
On January 4, 1990, a Federal Grand Jury returned a four- count indictment against petitioner and a two-count indictment against petitioner's alleged accomplice, Sam Clark (Clark), for their role in a fraudulent payout scheme involving money from the Department of Housing and Urban Development (HUD). Clark pleaded guilty prior to trial and testified on behalf *635 of the Government at petitioner's trial. Petitioner was charged with two counts of embezzling money from the United States in violation of 18 U.S.C. section 641 (1988), and two counts of willfully attempting to evade or defeat tax for the 1984 and 1985 taxable years in violation of section 7201. Petitioner's criminal trial thereafter commenced on August 22, 1990. Following trial, the jury found petitioner guilty of all four charges. Petitioner was thereafter sentenced to 4 years imprisonment, followed by 5 years of probation. The district court also ordered petitioner to participate in drug screening, to pay a special assessment of $ 200, and to pay restitution to HUD in the amount of $ 18,500. On May 20, 1992, petitioner's conviction was affirmed by the Court of Appeals for the Seventh Circuit in United States v. Tipton, 964 F.2d 650 (7th Cir. 1992). Procedural Background
A timely petition was filed on June 25, 1991. At the time the petition was filed, petitioner resided at the Shawnee Correctional Center in Vienna, Illinois. Respondent's answer, filed on October 11, 1991, after an extension to file *636 the answer was granted, asserted affirmative allegations of fact in support of the determination that petitioner is liable for the addition to tax for fraud pursuant to section 6653(b). Respondent's answer, alleging specific affirmative facts constituting fraud, reads, in pertinent part, as follows: 6. FURTHER ANSWERING the petition, and in support of the determination that all or a part of the underpayment of tax required to be shown on the petitioner's income tax return for each of the taxable years 1983 through 1985 is due to fraud, the respondent alleges as follows: (a) The United States Department of Housing and Urban Development (HUD) is an agency of the United States Government with responsibility, in part, for the distribution of federal funds to state and local governments and agencies. (b) The City of Aurora, Illinois, received funds from HUD for various housing-related programs during 1983 through 1985. One such federally funded program was the Homeowners Assistance Program (Program), a program designed to help low-income homeowners obtain money grants and loans to finance home repairs and improvements. (c) The Program was operated and administered by the Aurora *637 Community Development Department, Division of Neighborhood Services. (d) Petitioner Darryl S. Tipton held the position of "rehabilitation specialist" in the Division of Neighborhood Services. As rehabilitation specialist, the petitioner had responsibility to administer the Program, including direct responsibility to ensure that Program funds were spent on authorized repairs and improvements for the benefit of qualified citizens. The petitioner was responsible for screening applicants for Program benefits and certifying that they were qualified to receive those benefits. He was also responsible for inspecting the work performed under the Program to ensure that it had been properly completed before Program funds were used to pay for it. (e) From August 1983 through January 1985, the petitioner created and signed false and forged documents designed to fraudulently obtain funds from the Program. These false and forged documents reflected that rehabilitation work had been done on certain homes in Aurora, that the petitioner had inspected the work, and that the Program money should be released to pay for this work -- but no such work had ever been performed. The petitioner also forged *638 the signatures of homeowners and other City of Aurora officials on these documents, which fraudulently authorized the payment of Program funds for work that was never performed. (f) These false and fraudulent documents resulted in the payment of Program funds, by check, to the order of Samuel Clark. (g) Samuel Clark owned and operated a construction and home repair business called Clark Maintenance Management. (h) At the direction of the petitioner, Samuel Clark cashed these fraudulently obtained checks and returned the proceeds to the petitioner. In this manner, the petitioner fraudulently obtained Program funds in the amounts of $ 18,439, $ 178,915, and $ 25,500 for the taxable years 1983, 1984 and 1985, respectively. (i) In 1985, the petitioner received $ 13 of interest income from the Bank of Carbondale and $ 23 of interest income from Boatmen's National Bank. (j) The petitioner received a $ 588 taxable pension distribution from the Illinois Municipal Retirement [sic] in 1985. (k) In 1985, the petitioner received $ 2,553 of wages from the City of Aurora. (l) In 1985, the petitioner received $ 3,553 of taxable unemployment compensation from the Illinois Bureau of Employment. *639 (m) Petitioner jointly filed federal income tax returns for the taxable years 1983, 1984 and 1985 with Marilyn Tipton. (n) Petitioner fraudulently and with intent to evade tax omitted $ 18,439, $ 178,915, and $ 25,500 of embezzled Program funds from his income tax returns for the taxable years 1983, 1984 and 1985, respectively. (o) With respect to his 1985 income tax return, the petitioner fraudulently and with intent to evade tax omitted $ 36 of interest income, a $ 588 taxable pension distribution, $ 2,553 of wages, and $ 3,553 of taxable unemployment compensation. (p) The petitioner understated his taxable income for the taxable years 1983 through 1985 in the amounts of $ 18,439, $ 178,915, and $ 40,607, respectively. (q) The petitioner understated his income tax liabilities for the taxable years 1983 through 1985 in the amounts of $ 4,139, $ 78,477, and $ 9,091, respectively. (r) Petitioner's fraudulent omission of specific items of income on his income tax returns for the taxable years 1983 through 1985 is part of a three-year pattern of intent to evade income taxes. (s) All of the underpayment of tax required to be shown on the petitioner's income tax return for each *640 of the taxable years 1983 and 1984 is due to fraud.
Petitioner did not file a reply, and respondent filed a motion for entry of order that undenied allegations in answer be deemed admitted pursuant to Rule 37. The Court notified peti- tioner of the filing of this motion and advised him that, if he did not file a reply to respondent's affirmative allegations of fact, the motion would be granted. Petitioner thereafter filed a reply on December 26, 1991, which stated in its entirety: 1) The allegations made by the respondent of taxes for fraud, [sic] under I.R.C. sections 6653(b)(1) and 6653(b)(2) for each of the taxable years 1983 through 1985 is based upon a federal criminal case that is currently before the Court of Appeals for the Seventh Circuit, in which oral arguments were heard on September 12, 1991. 2) The petitioner denies all allegations presented by the respondent in the above case, and expects crimal [sic] case to be overturn [sic] by Seventh Circuit.
As stated earlier, petitioner's conviction was affirmed on May 20, 1992, by the Court of Appeals for the Seventh Circuit in United States v. Tipton, 964 F.2d 650 (7th Cir. 1992). *641 On July 1, 1992, petitioner's Tax Court case was first set for a December 7, 1992, trial [2] in Chicago, Illinois. On September 18, 1992, respondent filed a report informing the Court that petitioner was incarcerated at that time and that, absent the issuance of a writ of habeas corpus ad testificandum, petitioner would be unable to attend the December 7, 1992, trial. On September 23, 1992, the Court, sua sponte, continued this case generally, after consideration of respondent's September 18, 1992, report. On October 22, 1992, this case was set for a March 22, 1993, trial in Chicago, Illinois. On November 27, 1992, respondent filed a motion to show cause why proposed facts and evidence should not be accepted as established (Rule 91(f) motion), pursuant to Rule 91(f), detailing petitioner's failure to respond and cooperate in the stipulation process. The Court, by order dated December 7, 1992, granted respondent's *642 motion and ordered petitioner to file a response and show cause by December 29, 1992, why the matters set forth in respondent's motion papers should not be deemed admitted for purposes of these proceedings. Petitioner filed his response to respondent's Rule 91(f) motion on February 22, 1993. Petitioner's February 22, 1993, response was overly vague; therefore, the Court ordered petitioner to file a supplemental response which would provide more thorough responses to several of respondent's proposed stipulations of fact. Petitioner filed his supplemental response on March 11, 1993. Petitioner's admissions to several of respondent's proposed stipulations of fact constitute facts in this case. By this reference, they are found and incorporated herein. On December 10, 1992, petitioner filed a motion for continuance indicating that he would be released from prison on July 23, 1993, and requested that a continuance be granted until September 1, 1993. On December 18, 1992, a general continuance was granted to petitioner in this matter. On January 14, 1993, this case was set for a June 14, 1993, trial in Chicago, Illinois. Respondent filed a report on May 13, 1993, detailing the *643 difficulties respondent was having in main- taining contact with petitioner and indicating that, as of May 4, 1993, petitioner had been released to a halfway house in Marion, Illinois. Respondent also informed the Court that, based on a conversation with an official at the United States Penitentiary in Marion, Illinois, despite the fact that petitioner had been released to a halfway house, petitioner was still considered to be in the custody of the United States Department of Justice, Federal Bureau of Prisons. As the result of a conference call among the parties and the Court on May 24, 1993, it was deter- mined that petitioner was unable to commence preparation of the trial of this case until some time after his July 1993 release from the halfway house; however, petitioner agreed to cooperate with respondent's counsel thereafter in order to settle the case or prepare it for trial. By written order of the Court, dated May 24, 1993, this case was, sua sponte, again continued generally in order to allow petitioner an opportunity to prepare for trial. Petitioner, despite his assurances to the Court that he would cooperate with respondent once he was released from custody, has failed *644 to maintain contact with respondent and the Court and has in other ways failed to properly prosecute the instant matter. On August 25, 1993, this matter was set for a January 31, 1994, trial in Chicago, Illinois. On October 6, 1993, respondent filed a second Rule 91(f) motion detailing, inter alia, petitioner's failure to respond and cooperate in the stipulation process. The Court, by order dated October 14, 1993, granted respondent's motion and ordered petitioner to file a response and show cause by November 2, 1993, why the matters set forth in respondent's motion papers should not be deemed admitted for purposes of these proceedings. On November 15, 1993, the Court, not having received a response from petitioner to its October 14, 1993, order, ordered that the matters set forth in Exhibit A to respondent's second Rule 91(f) motion filed October 6, 1993, be deemed stipulated for purposes of this case. By this reference, these facts are so found and incorporated herein. Although petitioner did respond to this Court and respondent at times during the course of these proceedings, we find that, on the whole, petitioner failed to cooperate with respondent and unnecessarily caused *645 the protraction of these proceedings. [3] Petitioner failed to comply with several of the Court's orders, did not file a trial memorandum, refused to participate in the stipulation process, and did not appear at trial. [4] Furthermore, during the course of the May 24, 1993, conference call, petitioner agreed that, upon release from custody, he would cooperate with respondent in order to bring this case to a conclusion. However, as soon as petitioner was released from custody, neither respondent nor the Court ever heard from petitioner again. The Court now finds that petitioner has clearly indicated, as shown by his conduct and the overall record in this case, that he no longer wishes to contest the fraud issue or any other issue involved in this case. Moreover, we find that petitioner's failure to cooperate with respondent made it impossible for respondent to conduct negotiations, exchange information, and stipulate mutually agreeable facts as required by Rule 91(a). The standing pretrial order has not been complied with by petitioner, nor has petitioner complied with the mandates of the Court as set forth in Branerton Corp. v. Commissioner, 61 T.C. 691 (1974). *646 Discussion
Deficiencies and additions to tax
Rule 123(a) provides, in pertinent part, that a party may be held in default when he has failed to proceed as provided by our Rules or as required by this Court. Rule 123(a); Smith v. Commissioner, 91 T.C. 1049, 1056 (1988), affd. 926 F.2d 1470 (6th Cir. 1991). The action or nonaction on the part of a taxpayer that constitutes sufficient grounds to apply Rule 123(a) in proceedings before us is a matter within this Court's discretion. Smith v. Commissioner, supra at 1056. *647 Petitioner's failure to proceed as provided by the Rules of this Court and his failure to cooperate with this Court and respondent constitute more than sufficient grounds for the entry of a default judgment against him. For these reasons, respondent's March 25, 1994, motion for entry of default decision as to the deficiencies and the section 6661 additions to tax, for which petitioner bears the burden of proof, will be granted. [5] Respondent's determinations on these issues are, therefore, sustained. Fraud
Section 6653(b) provides for an addition to tax for fraud. In order to sustain her determination as to the fraud addition to tax for a year, the Commissioner must prove, by clear and convincing evidence, that some part of the underpayment for that year is due to fraud with the intent to evade tax. Sec. 7454(a); Rule 142(b); Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), *648 affg. T.C. Memo. 1983-249; Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982); Doncaster v. Commissioner, 77 T.C. 334, 336 (1981); Tschudy v. Commissioner, T.C. Memo. 1993-567. The Commissioner must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of such taxes. Wedvik v. Commissioner, 87 T.C. 1458, 1468-1469 (1986); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proven by circumstantial evidence and reasonable inferences drawn from the facts, because presentation of direct proof of a taxpayer's intent is seldom possible. Wedvik v. Commissioner, supra at 1469; Rowlee v. Commissioner, supra at 1123. A taxpayer's entire course of conduct is examined to establish the requisite fraudulent intent. Recklitis v. Commissioner, 91 T.C. 874, 909-910 (1988). *649 To meet her burden, the Commissioner must show by clear and convincing evidence that (1) there was an underpayment, and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Sec. 7454(a); Rule 142(b); Recklitis v. Commissioner, supra at 909. We find, in light of the record, that there was an underpayment of tax for the 1983 through 1985 taxable years. We now turn to the element of petitioner's intent. A taxpayer who is criminally convicted of tax evasion pursuant to section 7201 is collaterally estopped from contesting, in any subsequent civil litigation, that he is subject to the addition to tax pursuant to section 6653(b), for the tax years involved in the criminal case. Amos v. Commissioner, 43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965). However, since a conviction under section 7201 establishes the existence of a tax deficiency but not its precise amount, the amount of the deficiency and the resulting penalty may still be litigated in subsequent civil proceedings. Moore v. United States, 360 F.2d 353, 356-357 (4th Cir. 1965). *650 Because we find that respondent has shown by clear and convincing evidence that there was an underpayment and that petitioner intended to evade or defeat tax, by virtue of the criminal convictions, we now hold that petitioner is liable for the fraud addition to tax as determined by respondent in the notice of deficiency for the 1984 and 1985 taxable years. We now turn to whether petitioner is liable for the fraud addition to tax for the 1983 taxable year. Respondent is entitled to satisfy her burden by relying on facts deemed admitted, as a consequence of imposed sanctions, or by a clear indication on the part of the taxpayer that he or she no longer would contest the fraud issue. Smith v. Commissioner, supra at 1052-1053; see also Marshall v. Commissioner, 85 T.C. 267 (1985); Doncaster v. Commissioner, 77 T.C. 334 (1981). The entry of default under Rule 123(a) has the effect of admitting all well-pleaded facts in respondent's answer. Smith v. Commissioner, supra at 1056-1058; see also Bosurgi v. Commissioner, 87 T.C. 1403, 1409 (1986); *651 Stanko v. Commissioner, T.C. Memo 1993-513. This is true even when a reply has been filed by a taxpayer which addresses the facts pleaded by respondent in her answer. Smith v. Commissioner, 926 F.2d at 1478; Rechtzigel v. Commissioner, 79 T.C. 132, 142 n.11 (1982) ("the necessary effect of defaulting petitioner is to deem admitted the affirmative allegations in the answer irrespective of petitioner's denial [in the reply]. The sanction thus converts the denial into an admission."), affd. 703 F.2d 1063 (8th Cir. 1983); Wallace v. Commissioner, T.C. Memo. 1993-620; see Gordon v. Commissioner, 73 T.C. 736 (1980); Walden v. Commissioner, T.C. Memo 1993-56; Byars v. Commissioner, T.C. Memo 1992-169. Entry of a default decision for the fraud addition is appropriate upon a determination, which is within this Court's discretion, that the pleadings set forth sufficient facts to support such a judgment. Smith v. Commissioner, 91 T.C. at 1058-1059. *652 The Commissioner's pleadings must, however, allege specific facts sufficient to sustain a finding of fraud before she will be entitled to a decision that includes an addition to tax for fraud upon the failure of a taxpayer to appear for trial. Smith v. Commissioner, 91 T.C. at 1058. We must now decide whether respondent's specific allegations of fact in the instant case, taken to be true by petitioner's default, coupled with petitioner's actual and deemed stipulations of fact, are sufficient to establish the existence of fraud. Smith v. Commissioner, 91 T.C. at 1059. The decision of the Court of Appeals for the Sixth Circuit, in Solomon v. Commissioner, 732 F.2d 1459 (6th Cir. 1984), affg. T.C. Memo 1982-603, sets forth a nonexclusive list of the "'badges' of fraud" that demonstrate fraudulent intent. These badges include: (1) The failure to report, and understatement of, income, (2) the taxpayer's failure to give the Government access to his records, (3) the taxpayer's failure to keep adequate books and records, (4) the taxpayer's experience and knowledge *653 of tax laws, and (5) concealment of assets. Solomon v. Commissioner, supra at 1461-1462. Implausible or inconsistent explanations of behavior are additional indicia of fraud. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986) affg. T.C. Memo 1984-601. Additionally, as in Smith, petitioner failed to appear for trial. Smith v. Commissioner, 91 T.C. at 1059-1060. In determining whether or not fraud exists, the Court may also look at evidence of prior and subsequent similar acts reasonably close to the years at issue. United States v. Johnson, 386 F.2d 630, 631 (3d Cir. 1967). Petitioner is deemed to have admitted all the affirmative allegations of fact in respondent's answer. Furthermore, we find that the affirmative allegations of fact contained in the answer, now deemed admitted, are factually sufficient, coupled with the fact of petitioner's criminal convictions and petitioner's actual and deemed stipulations of fact, to establish the existence of fraudulent conduct by petitioner. The badges of fraud we *654 find significant are, inter alia, as follows: (1) Petitioner's false and fraudulent conduct in obtaining funds through embezzlement during the years at issue; (2) his filing of false income tax returns which failed to report his true income; (3) his criminal convictions, pursuant to section 7201, for tax evasion in the years immediately subsequent to the year here at issue; (4) his consistent and substantial receipt of and failure to report income over a period of consecutive years; (5) the elaborate nature of the scheme used to acquire his income; (6) his consistent and substantial underpayment of income tax over a period of years; and (7) his failure to appear and contest the determinations against him. In light of the record taken as a whole and reasonable inferences therefrom, we now find that the facts in this case show, by clear and convincing evidence, that petitioner intended to evade taxes known to be owing for the 1983 taxable year by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Our review of the entire record in this case, including the well-pleaded facts contained in respondent's answer, satisfies us that the additions to tax for *655 fraud should be sustained by the entry of a default against petitioner pursuant to Rule 123(a). To reflect the foregoing, An appropriate order will be issued, and decision will be entered for respondent.
Footnotes
1. The only additions to tax determined by respondent for which petitioner bears the burden of proof are those pursuant to sec. 6661.↩
2. This case has been noticed for trial on four occasions and has been presided over by as many Judges.↩
3. This case was noticed for trial on four separate occasions. Each of these notices specifically stated, inter alia, that "YOUR FAILURE TO COOPERATE↩ MAY * * * RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU." (Emphasis added.)
4. Each notice for trial specifically stated, inter alia, that "YOUR FAILURE TO APPEAR↩ MAY RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU." (Emphasis added.)
5. Because we grant respondent's motion for entry of default decision, respondent's motion to dismiss for lack of prosecution will be denied as moot.↩