JAMES W. AND NANCY S. JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 25523-90
United States Tax Court
T.C. Memo 1993-227; 1993 Tax Ct. Memo LEXIS 229; 65 T.C.M. (CCH) 2760; May 24, 1993, Filed *229 Decision will be entered under Rule 155. For petitioners: Robert E. Giffin. For respondent: Roderick H. Fillinger. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax for taxable years 1983, 1984, and 1985: Additions to Tax Sec.
Sec.
Sec. Year
Deficiency
6653(b)(1)
6653(b)(2)
6661(a)
1983
$ 7,080
$ 3,540
50% of the
$ 1,770
interest due
on $ 7,080
1984
17,328
8,664
50% of the
4,332
interest due
on $ 17,328
1985
8,838
4,419
50% of the
2,210
interest due
on $ 8,838
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by both parties, which will be given effect in the Rule 155 computation, the issues for decision are: (1) Whether petitioners received unreported income from embezzled funds during taxable years 1983, 1984, and 1985, in the amounts of $ 20,295, $ 44,200, and $ 23,758.25, respectively, as determined by respondent. *230 We hold that they did. (2) Whether petitioners received additional unreported embezzlement income in the amount of $ 13,550.75 during taxable year 1985 as asserted by respondent in the amendment to the answer. We hold that they did. (3) Whether petitioners failed to report capital gain on the sale of their residence in 1985 as asserted in respondent's amended answer. We hold that they did not. (4) Whether petitioner James W. Johnson is liable for the additions to tax for fraud pursuant to section 6653(b) for the taxable years at issue. We hold that he is. (5) Whether petitioner Nancy S. Johnson is liable for the additions to tax for negligence pursuant to section 6653(a)(1) and (2) for the taxable years at issue. We hold that she is not. (6) Whether petitioners are liable for the additions to tax pursuant to section 6661 for the taxable years at issue. We hold that they are. (7) Whether petitioner Nancy S. Johnson is entitled to innocent spouse relief pursuant to section 6013(e). We hold that Mrs. Johnson is entitled to innocent spouse relief for taxable years 1983 and 1984 only. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The *231 stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Delaware, Ohio, at the time they filed the petition in this case. During the years at issue, petitioners were married and filed joint Federal income tax returns. All references made to petitioner in the singular refer to petitioner James W. Johnson. Petitioner's Embezzlement Activities
During the years at issue, petitioner was employed by Union County Memorial Hospital (the hospital) in Marysville, Ohio, as its administrator. The hospital is funded and operated as a part of the political subdivision Union County, Ohio. Petitioner holds a bachelor of arts degree in business. As administrator, petitioner was the chief executive officer responsible for the daily operation of the hospital including oversight of disbursements from the hospital's accounts to pay for operating expenses and the recruitment of doctors. As a part of this recruitment, petitioner was authorized by the hospital to negotiate employment contracts, offer monthly income guarantees, and advance moving and living expenses to prospective employees. Petitioner established a bank account under the name *232 of Memorial Hospital Recruitment Fund, James W. Johnson, Agent (recruitment fund), in October 1982. Each hospital bank account required more than one authorized signatory. The hospital's board of trustees did not approve the opening of the above-mentioned account nor were they aware of such. Petitioners reported the interest earned on the recruitment fund account on their tax returns for the taxable years at issue. The hospital maintained a general fund; petitioner was a signatory on this fund and was authorized to use this fund to recruit doctors. The board of trustees first became aware of the existence of petitioner's recruitment fund in June 1985 during the annual operations audit performed by the accounting firm of Ernst & Whinney. There were significant fluctuations in operating expenditures from 1984 to 1985 as a result of checks being written against the hospital's general fund payable to the recruitment fund established by petitioner. Petitioner kept no records with respect to any transactions pertaining to the recruitment fund. Stephen Hall, criminal investigator for the Union County prosecutor's office, conducted an investigation into petitioner's embezzlement activities. *233 Through the use of grand jury subpoenas, issued by a special grand jury convened by the Union County prosecutor, Mr. Hall investigated petitioner's bank and financial records. In the course of this investigation, Mr. Hall discovered the following: (1) Petitioner established the recruitment fund bank account with himself as the sole owner of the account; (2) the hospital established a legitimate fund used to recruit new doctors. Doctors were promised a set monthly salary and were required to pay back to the hospital all amounts earned over the set salary. The doctors paid this amount over to petitioner, who then deposited such into the recruitment fund; (3) during the years 1981 through 1985, petitioner purchased 797 traveler's checks in the total amount of $ 72,800 with funds embezzled from the hospital; (4) petitioner negotiated 639 of these traveler's checks, and the remainder are still outstanding in the amount of $ 14,650; (5) checks written against the recruitment fund totaling $ 32,000 were deposited into petitioner's Banc Ohio checking account; (6) several other checks drawn from the recruitment fund totaling $ 25,000 were used to purchase traveler's checks at Banc *234 Ohio; and (7) several checks were written against the recruitment fund account and made payable to Banc Ohio. On October 30, 1985, petitioner was indicted by the Union County grand jury for 38 counts of theft-in-office, 1 count of grand theft, 1 count of theft, and 1 count of forgery. Petitioner posted a $ 25,000 cash surety bond. On February 6, 1986, petitioner entered a guilty plea to all 41 counts of the criminal indictment, and the cash bond was forfeited to Union County Memorial Hospital as partial restitution. Petitioner was ordered to pay restitution for all amounts contained in the indictment for each count for the years 1981 through 1985. In addition, petitioner received a 5-year sentence and forfeited all contributions made on his behalf into the Public Employees Retirement System. On May 8, 1986, petitioner's sentence was suspended; petitioner received probation. Transfer of Petitioners' Residence
In 1973, petitioners purchased a residence in Marysville, Ohio. Citizens Federal Savings and Loan Association (Citizens Federal) held a mortgage secured by this residence during the years at issue in this case. Petitioners' monthly mortgage payment to Citizens *235 Federal was originally in the amount of $ 329.29 and later increased to take into account an increase in the amount being escrowed by the bank for taxes and insurance. Petitioner usually made the mortgage payment to Citizens Federal by personal check drawn against a joint checking account held by petitioners at Banc Ohio. Funds embezzled from the hospital were periodically deposited into this joint account at Banc Ohio. On June 5, 1985, petitioners transferred this residence to Susan A. Rawlings, petitioner Nancy S. Johnson's mother, by quit-claim deed. This transfer was made for no consideration. The transfer of petitioners' residence was allegedly made upon the advice of counsel with the specific intent of making it difficult for petitioners' creditors to foreclose upon or otherwise seek satisfaction of petitioners' liabilities from their equity in the residence. On November 26, 1985, the board of trustees of Union County Memorial Hospital sued petitioners and Susan A. Rawlings to set aside petitioners' conveyance of their residence as a fraudulent conveyance. The parties entered into an agreed order to permit the sale of the residence by Susan A. Rawlings to a third party. *236 The order provided for $ 25,000 of the sale proceeds to be posted as a cash bond in the criminal action pending against petitioner; the remainder was held in escrow. On December 10, 1985, the residence was sold for $ 66,000; closing costs were $ 6,017. Deficiency
Respondent determined that petitioners failed to report embezzlement income in the amounts of $ 20,295, $ 44,200, and $ 23,758.25, for taxable years 1983, 1984, and 1985, respectively. Petitioners admit to the receipt of omitted income in the amounts of $ 3,200, $ 10,000, and $ 34,000, for taxable years 1983, 1984, and 1985. Additionally, respondent asserts in the answer that Mrs. Johnson is liable for the additions to tax for negligence pursuant to section 6653(a)(1) and (2). By way of amended answer, respondent asserts that petitioners had additional unreported embezzlement income for taxable year 1985 in the amount of $ 13,550.75. At the time the deficiency notice was sent in this case, respondent mistakenly believed that $ 25,000 was paid as restitution in taxable year 1985. This amount was in fact used to post bond in petitioner's criminal case. The bond was not forfeited until 1986 when petitioner entered *237 his guilty plea; thus, restitution did not occur until 1986. Respondent, believing that this restitution was made in 1985, initially reduced petitioners' tax liability. Respondent now asserts, however, that petitioners' income must be increased by $ 13,550.75, the portion of the restitution respondent allocated as a setoff against petitioners' embezzlement income for 1985. Additionally, respondent asserts by way of amended answer that petitioners failed to report income from capital gains on the sale of their residence in 1985, and thereby increased their capital gain income in that year by $ 26,000. OPINION Issue 1. Embezzlement Income
The first issue for our consideration is whether petitioners received unreported income from embezzled funds during taxable years 1983, 1984, and 1985, in the amounts determined by respondent in the notice of deficiency. Petitioners argue that their unreported income for taxable years 1983, 1984, and 1985, was $ 3,200, $ 10,000, and $ 34,000, respectively. Illegal gains from embezzlement clearly constitute gross income. Sec. 61(a); James v. United States, 366 U.S. 213 (1961). The determinations made by *238 the Commissioner in the statutory notice of deficiency are entitled to a presumption of correctness. Rule 142(a). The burden of proving the Commissioner's determinations to be erroneous is on the taxpayer. Schira v. Commissioner, 240 F.2d 672 (6th Cir. 1957), affg. per curiam T.C. Memo. 1956-35; Hasson v. Commissioner, 239 F.2d 778 (6th Cir 1956), affg. T.C. Memo. 1955-121. In the instant case, petitioners do not dispute that they received embezzlement income; they dispute the amount determined as unreported embezzlement income by respondent. Petitioner pleaded guilty to and was convicted of 38 counts of theft-in-office, 1 count of grand theft, 1 count of theft, and 1 count of forgery. Ohio Rev. Code Ann. section 2921.41 (Anderson 1983), which petitioner was convicted under, entitled "Theft in office; restitution; withholding of retirement benefits", states the following: (A) No public official or party official shall commit any theft offense * * * when either of the following applies: (1) The offender uses his office in aid of committing the offense, *239 or permits or assents to its use in aid of committing the offense; (2) The property * * * involved is owned by this or any other state, * * * or any political subdivision * * *.
(B) Whoever violates this section is guilty of theft in office, a felony of the third degree. * * * (2)(a) A court that imposes sentence for a violation of this section based on conduct described in division (A)(2) of this section shall require the public official or party official who is convicted of or pleads guilty to the offense to make restitution for all of the property * * * that is the subject of the offense, in addition to the term of imprisonment and any fine imposed. * * *
In Ohio, therefore, when a defendant is convicted of theft-in-office, the court imposing sentence is required to determine how much the defendant misappropriated and must require the defendant to make restitution. Due to the nature of the offense, the specific amounts embezzled were essential elements of each count in the indictment. Each count in the indictment contains specific dates in which petitioner embezzled funds from the hospital and the amounts embezzled. The indictment, to which petitioner pled *240 guilty, revealed that petitioner converted to his own use hospital funds totaling $ 136,000 during 1981 through 1985. More specifically, petitioner embezzled $ 20,295, $ 44,200, and $ 41,700, in taxable years 1983, 1984, and 1985, respectively. Because it was necessary, under Ohio Rev. Code Ann. section 2921.41, for the sentencing court to determine exactly how much petitioner embezzled, we hold petitioner is precluded under the doctrine of collateral estoppel from disputing the amounts he received as embezzlement income in taxable years 1983, 1984, and 1985 as set forth in the indictment. Under the doctrine of collateral estoppel, a decision on the merits in an action precludes a party to that action, or his privies, from future litigation of any issue actually litigated and necessary to the outcome of that suit. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). Collateral estoppel applies to issues of fact or law previously litigated, even though the claims may differ. Meier v. Commissioner, 91 T.C. 273, 286 (1988). It has long been established that estoppel in a civil case may be based upon a judgment in *241 a prior criminal proceeding. Lefkowitz v. Tomlinson, 334 F.2d 262, 264 (5th Cir. 1964). Under Ohio law, a plea of guilty is an admission of all the facts contained in the indictment and is substantively the same as a conviction by a jury. State v. Cash, 40 Ohio St. 3d 116, 118 (1988). The Supreme Court in Kercheval v. United States, 274 U.S. 220, 223 (1927), stated that a guilty plea differs in purpose and effect from a mere admission or extrajudicial confession; it is itself a conviction. In Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 75 (1964), we held that in situations where no evidence is introduced in support of the conclusion of guilt reached by the court, because none is required due to the guilty plea, this is not material; the judgment rendered is nevertheless a judgment on the merits sufficient for purposes of collateral estoppel to preclude relitigation of issues the determination of which are essential to the conclusion reached. In Montana v. United States, 440 U.S. 147 (1979), the Supreme Court refined *242 the parameters for use of collateral estoppel using a three-pronged test: (1) Whether the issues presented by this litigation are in substance the same as those prior; (2) whether controlling facts or legal principles have changed significantly since the first judgment; and (3) whether other special circumstances warrant an exception to the normal rules of preclusion. Id. at 155. We find that no special circumstances exist warranting any exception, and petitioners have not directed our attention to any change in controlling facts or legal principles since the first judgment. Thus, the only question we must resolve is whether the issues involved in the instant case are sufficiently similar to those resolved in the criminal proceeding so as to warrant the application of collateral estoppel. The issue in the criminal proceeding was whether petitioner was guilty of committing theft-in-office, grand theft, theft, and forgery in the amounts contained in the indictment. Petitioner pleaded guilty to all counts. The issue now before us is whether petitioner failed to report the amounts of embezzlement income contained in the indictment. While it is true *243 that petitioner's tax liability was not in issue in the earlier proceeding, and neither did the State court decide whether petitioner omitted income, collateral estoppel applies to issues of fact previously litigated as well as issues of law previously litigated. Meier v. Commissioner, supra at 286. Even though the resulting legal and tax consequences differ, both causes of action are based upon the same factual predicate; i.e., petitioner's embezzlement activities. We find that petitioner had sufficient incentive and opportunity to fully litigate this issue in the prior proceeding and contest the amounts contained in any one of the counts against him. He was aware in the first proceeding that pleading guilty to all counts would lead to a conviction on all counts and would require petitioner to make restitution of the amounts contained in the indictment. We find that the issues of fact in the prior proceeding are sufficiently similar to those before this Court so as to call for the application of collateral estoppel. Petitioners argue that their unreported income for taxable years 1983, 1984, and 1985, was $ 3,200, $ 10,000, and $ 34,000, respectively. *244 On brief, petitioners assert that petitioner used some of the money in the recruitment fund for legitimate hospital expenditures, and to the extent so used, does not constitute income. Petitioner, however, kept no records reflecting use of the embezzlement proceeds for legitimate hospital expenditures. In addition, petitioners assert that they had no accumulation of assets nor did they have an extravagant lifestyle or benefit personally from the embezzlement income during the years at issue. Petitioners base this assertion upon the fact that in 1986 they filed a bankruptcy petition which indicated no accumulation of assets. This argument is not persuasive. Stephen Hall performed a careful search regarding the traveler's checks purchased by petitioner with embezzlement proceeds, which is contained in Exhibits L and O to the record, and determined the date each traveler's check was purchased and negotiated, where it was negotiated, and the amount. It appears that petitioner negotiated these checks at dozens of hotels, restaurants, department stores, clothing stores, gas stations, and in his joint checking account. Many of these purchases, therefore, did not result in the accumulation *245 of goods which are durable in nature and would therefore be listed on a bankruptcy petition. Petitioners argue further that there was duplication of funds, and respondent did not take into account any redeposits which petitioners alleged did occur. It is conceivable that petitioner may have deposited funds into the illegal account, withdrawn the funds, purchased traveler's checks, and then redeposited funds which he did not use. This Court, however, has no means by which to determine whether there were any such redeposits as petitioner kept no records. Finally, petitioners argue that only $ 50,200 was in fact embezzled, the amount of traveler's checks actually cashed. It appears from the record, however, that petitioner's embezzlement was not confined solely to depositing funds into the illegal account and purchasing traveler's checks therefrom. Counts 1 through 7 indicate that petitioner made unauthorized withdrawals from a legitimate fund created by the hospital. In addition, petitioner never kept any records of the cash and checks he deposited into or withdrew from the recruitment fund, no expenditures from this account were authorized by the hospital, and petitioner was *246 the only person to ever deposit money into or withdraw money from the recruitment fund. In May 1985, petitioner deposited a check for $ 10,000 made payable to the hospital into his personal checking account. Accordingly, we conclude that wholly apart from the collateral estoppel issue, petitioners' testimony is not persuasive; therefore, petitioners failed to meet their burden of proof on this issue. Respondent's determinations with respect to petitioners' embezzlement income in taxable years 1983, 1984, and 1985, are sustained. Issue 2. Additional Unreported Embezzlement Income for 1985
The issue of whether petitioners had an additional $ 13,550.75 of unreported embezzlement income was first raised by way of respondent's amended answer, and therefore is a new matter for which respondent bears the burden of proof. Rule 142(a). Respondent asserts that this increase in embezzlement income results from the disallowance of a deduction pursuant to section 165 for restitution made by petitioner to Union County Memorial Hospital. The notice of deficiency reflected a figure arrived at based upon the amount of petitioners' embezzlement income less a deduction for restitution *247 made in 1985 in the amount of $ 13,550.75. Apparently application of the $ 25,000 restitution was apportioned to different years. After examination of the record, however, it became clear that this restitution was not made in 1985, but in fact was made in 1986, a year not before this Court. Petitioners argue that the proceeds from the sale of their residence were paid to the hospital in 1985, and although it served as bond, it was in the possession of the hospital; therefore, petitioners should be allowed a deduction for restitution made in taxable year 1985. This argument is without merit. Section 165(a) allows a deduction for any loss sustained during the taxable year which is not compensated for by insurance or otherwise, but in the case of individuals such loss deduction is limited. Section 165(c)(2) allows individuals a deduction for losses incurred in any transaction entered into for profit, though not connected with a trade or business. Section 165(a) in connection with section 165(c)(2) enables embezzlers to take a loss deduction in the year in which repayment is made to the victim of the embezzlement. In 1985, however, petitioners did not use the $ 25,000 to repay *248 the hospital the amounts petitioner embezzled. Rather petitioners used this amount to post bond in petitioner's criminal proceeding; therefore, in no manner was this payment repayment of the embezzled funds in taxable year 1985. Accordingly, we hold that the burden of proof has been met by respondent on this issue. Petitioners have additional embezzlement income in the amount asserted in respondent's amended answer for taxable year 1985. Issue 3. Sale of Petitioners' Residence
The issue of whether petitioners had capital gain income on the sale of their residence in 1985 was first raised by way of respondent's amended answer, and therefore is a new matter for which respondent bears the burden of proof. Rule 142(a). Petitioners purchased their residence in 1973. It is unclear from the record the cost basis in this property. Petitioner contends the residence was purchased for $ 41,000; respondent asserts the cost to have been $ 40,000. In any event, petitioners transferred the residence to petitioner Nancy S. Johnson's mother in June 1985 for no consideration. The board of trustees of the hospital sued petitioners and Susan A. Rawlings to set aside petitioners' conveyance *249 of their residence as a fraudulent conveyance. The parties entered into an agreed order to permit the sale of the residence by Susan A. Rawlings to a third party. The residence was sold on December 10, 1985, for $ 66,000. Petitioners did not report any gain from the sale of their residence on their Federal income tax return for taxable year 1985. Respondent asserts that petitioners had a realized capital gain of $ 26,000 in 1985 which they failed to report. Petitioners assert that they realized no gain on the sale of their residence. In fact, petitioners assert that they suffered a $ 1,200 loss on the sale. Petitioner testified to making several capital improvements to the home including a solar heating system at a cost of $ 10,011.86, a new roof at a cost of $ 3,500, a bath and shower unit for $ 1,100, and a shed for $ 1,000. Petitioner also testified that several other improvements were made although they cannot recall the cost of these improvements nor are they in possession of any receipts reflecting such. Respondent has the burden of proving that petitioners realized a capital gain on the sale of their residence. Accordingly, respondent also has the burden of proving *250 petitioners' basis in this property and the sales price. Based upon the testimony, we conclude that respondent has failed to prove petitioners' basis in this property, and we therefore find that petitioners realized no capital gain on the sale of their residence in 1985. Issue 4. Addition to Tax for Fraud
The next issue for our consideration is whether petitioner is liable for the addition to tax for fraud pursuant to section 6653(b). Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Smith v. Commissioner, 91 T.C. 1049 (1988), affd. 926 F.2d 1470, 1475 (6th Cir. 1991). To sustain the addition to tax under section 6653(b)(1), respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of those taxes, that there is an underpayment of tax, and that some portion of the underpayment for each taxable year was due to the taxpayer's fraudulent intent. United States v. Walton, 909 F.2d 915, 926 (6th Cir. 1990); Stoltzfus v. United States, 398 F.2d 1002 (3d Cir. 1968). *251 The existence of fraud is a question of fact to be determined from a consideration of the entire record. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). While fraud will never be presumed, Beaver v. Commissioner, 55 T.C. 85, 92 (1970), it may be proved by circumstantial evidence, e.g., Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Stone v. Commissioner, 56 T.C. 213, 214 (1971). Many indicia or badges of fraud have been developed over the years by the courts including (1) concealment of assets, (2) maintaining inadequate records, (3) engaging in and attempting to conceal illegal activities, (4) dealing in cash or cash equivalents, and (5) a willingness to defraud another in a business transaction pointing to a willingness to defraud the Government. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Solomon v. Commissioner, 732 F.2d 1459, 1462 (6th Cir. 1984), *252 affg. per curiam T.C. Memo. 1982-603. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence. Bradford v. Commissioner, supra at 303; Solomon v. Commissioner, supra at 1461. Having considered the entire record, we conclude that respondent has proven by clear and convincing evidence that the above-mentioned badges of fraud exist in this case. Petitioner is a well-educated, experienced businessman. Petitioner has a bachelor's degree in business and was employed as the chief executive officer of Union County Memorial Hospital during the taxable years at issue. Nevertheless, petitioner claims to be unknowledgeable regarding the tax laws and for this reason omitted the embezzlement income from his returns. We find the argument meritless for two reasons. First, petitioners reported the interest from the recruitment fund on their income tax returns for the taxable years at issue. Petitioner testified that he was concerned with and aware of the tax consequences of receiving Forms 1099 from *253 his bank. Petitioner knew that a Form 1099 would be issued from the bank in which he kept the recruitment fund and that the interest was includable in gross income. This indicated a knowledge of the reporting responsibilities imposed upon banks by the Government and the impact the information so reported has on a taxpayer's return. Second, at trial, when asked by counsel for respondent whether he would have reported the embezzlement income had he known it was taxable, petitioner replied,."Well, no. I'd have to say no." Petitioner's concealment of assets is another indication of fraudulent intent. Due to the realization that his embezzlement activities were about to be revealed, petitioner transferred his residence to his mother-in-law for no consideration. Petitioner testified that he did so upon the advice of counsel in order to place the home beyond the reach of creditors. Petitioner failed to keep adequate records with regard to the recruitment fund. Petitioner argues that he used some of the money in the recruitment fund for legitimate hospital expenditures. Petitioner, however, has kept no records whatsoever with respect to any legitimate hospital expenditures. Petitioner *254 embezzled from his employer and successfully concealed this illegal activity for nearly 5 years. We find that petitioner's willingness to defraud his employer is circumstantial evidence of his willingness to defraud the Government. When one misappropriates another's funds to his or her own use through misrepresentation and concealment, a fair inference can be drawn that he or she will not hesitate to misrepresent and to conceal the receipt of those same funds from the Government with intent to evade tax. Rogers v. Commissioner, 111 F.2d 987 (6th Cir. 1940). Dealing in cash or cash equivalents is another badge of fraud which is present in this case. Petitioner's embezzlement scheme consisted of placing hospital funds into the recruitment fund and using that money to purchase traveler's checks which he negotiated for personal use. The evidence is overwhelming that by conduct intended to mislead and conceal his income petitioner intended to evade tax which he knew or believed he owed. Respondent has also established tax underpayments in the amounts asserted, and has shown that the entire amount of each underpayment is due to petitioner's fraud. *255 Accordingly, respondent's assertion of additions to tax for fraud against petitioner under section 6653(b) are sustained for each taxable year at issue. Issue 5. Additions to Tax Due to Negligence Asserted Against Mrs. Johnson
Section 6653(a)(1) imposes an addition to tax of 5 percent of the underpayment if any part of the underpayment is due to negligence or an intentional disregard of rules or regulations. Section 6653(a)(2) provides for an additional amount to be added to the addition to tax under section 6653(a)(1) equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Petitioner and Mrs. Johnson filed joint income tax returns for taxable years 1983, 1984, and 1985. The liability for additions to tax for taxpayers who file jointly is joint and several. Sec. 6013(d)(3); Pesch v. Commissioner, 78 T.C. 100, 129 (1982). We have found that petitioner is liable for the additions to tax for fraud under section 6653(b) for all years at issue. If we were to hold Mrs. Johnson liable for the additions to tax for negligence for the taxable years *256 at issue in this case, petitioner would then be jointly and severally liable for the negligence additions to tax in these years. A taxpayer cannot be liable for the addition to tax for fraud and the addition to tax for negligence. Sec. 6653(b)(3). Accordingly, we do not sustain respondent's assertion on this issue. See Shokai v. Commissioner, T.C. Memo. 1992-41; Minter v. Commissioner, T.C. Memo. 1991-448. Issue 6. Section 6661 Additions to Tax
The next issue for our consideration is whether petitioners are liable for additions to tax under section 6661 as determined by respondent. Section 6661(a) provides for an addition of 25 percent of an underpayment attributable to a substantial understatement of income tax. Section 6661(b)(1)(A) provides that for individuals, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Petitioners bear the burden of proving they are not liable for this addition. Rule 142(a). Because petitioners have failed to do so, the additions to tax under section 6661 are sustained for the taxable years at *257 issue. Issue 7. Innocent Spouse
Petitioners contend that Mrs. Johnson is entitled to innocent spouse relief pursuant to section 6013(e). When a husband and wife file a joint Federal income tax return, the tax liability is joint and several. Sec. 6013(d)(3). Relief may be granted, however, to an innocent spouse if he or she proves: (1) A joint return has been made for a taxable year; (2) there is a substantial understatement of tax on the return attributable to grossly erroneous items of the other spouse; (3) in signing the return, he or she did not know, and had no reason to know, of the substantial understatement; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such substantial understatement. Sec. 6013(e)(1). In order for relief to be afforded, all four statutory requirements must be met. Estate of Jackson v. Commissioner, 72 T.C. 356, 360 (1979). Mrs. Johnson bears the burden of proving that she satisfies each requirement of section 6013(e). Shea v. Commissioner, 780 F.2d 561, 565 (6th Cir. 1986), *258 affg. on this issue T.C. Memo. 1984-310; Bokum v. Commissioner, 94 T.C. 126, 138 (1990). The failure to establish any requirement results in denial of the requested relief. Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971). Petitioners filed joint returns for each taxable year at issue, and those returns substantially understated their income taxes due to grossly erroneous items attributable to Mr. Johnson. Mrs. Johnson must now prove the first of the two remaining elements, that she had no reason to know of the substantial understatements of tax liability due to the grossly erroneous items of her spouse. Sec. 6013(e)(1)(C). A spouse has reason to know there is a substantial understatement if, at the time the return was signed, a reasonably prudent taxpayer in the spouse's position could be expected to know that the return contained a substantial understatement. Shea v. Commissioner, supra at 566; Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979). Mrs. Johnson's testimony has established to our satisfaction that she had *259 no actual knowledge of her husband's embezzlement activities and no knowledge of any substantial understatement of income in taxable years 1983 and 1984. With respect to taxable year 1985, however, Mrs. Johnson testified that upon the advice of petitioner's attorney, she signed the 1985 income tax return with her husband the day before he entered the guilty plea to the 41-count indictment. Based upon this testimony, we conclude Mrs. Johnson had actual knowledge of the unreported embezzlement income for taxable year 1985. Our focus, therefore, turns to a more difficult inquiry, whether Mrs. Johnson had reason to know of the substantial understatements in income tax for 1983 and 1984. The standard to be applied in determining whether a taxpayer had reason to know of a substantial understatement of tax liability is whether a reasonable person in the taxpayer's circumstances could have been expected to know of the substantial understatement at the time of signing the return. Terzian v. Commissioner, supra at 1170. To be entitled to the benefits of section 6013(e), a spouse is not required to have perfect knowledge of the family's finances; nor *260 is the spouse required to see that the family maintains a balanced budget. Mysse v. Commissioner, 57 T.C. 680, 699 (1972). The spouse cannot, however, close his or her eyes to unusual or lavish expenditures. Id. at 699. It appears from the record the embezzled funds were primarily used for purchasing traveler's checks. These traveler's checks were negotiated at various retail establishments, restaurants, gas stations, clothing stores, department stores, and hotels, and deposited into petitioners' joint checking account. We find that these expenditures were not sufficient to give Mrs. Johnson reason to know of petitioner's omitted embezzlement income. Until he was detected, petitioner embezzled hospital funds from 1981 through 1985 apparently without raising the least suspicion from even one member of the board of directors, any officers, State auditors, or any other person who had a pecuniary or professional interest in the hospital. We find no reason why Mrs. Johnson, a person with no business or tax knowledge, would have reason to know more about the embezzled income than interested persons associated with the *261 hospital. See id. at 698. Mrs. Johnson testified that she always relied on her husband to ensure that their income tax returns were properly completed, and she further testified to never having read the returns prior to signing them. While it is true that Mrs. Johnson should have been aware of her responsibility for reviewing returns she signed, as asserted by respondent, the fact that she signed returns without reading them does not require the conclusion that she had reason to know of the omitted embezzlement income. Terzian v. Commissioner, supra at 1171. After a careful weighing of all the evidence, we conclude that Mrs. Johnson had no reason to know of the omitted income in taxable years 1983 and 1984. We now turn to the final question to be resolved, whether, taking into account all the facts and circumstances, it is inequitable to hold Mrs. Johnson liable for the tax deficiency. Sec. 6013(e)(1)(D). Section 6013(e) as amended no longer requires us to determine whether a spouse significantly benefited from the erroneous item; however, this factor is still to be taken into account in determining whether it *262 is inequitable to hold a spouse liable. Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Normal support is not considered a significant benefit. Terzian v. Commissioner, supra at 1172. Mrs. Johnson bears the burden of proving that she received no significant benefit from the understatements other than normal support, and this burden must be satisfied with specific facts regarding lifestyle expenditures, asset acquisitions, and the disposition of the benefits of the understatements. Estate of Krock v. Commissioner, 93 T.C. 672 (1989). Stephen Hall's search regarding the traveler's checks purchased by petitioner with embezzlement proceeds reflects that these checks were negotiated at hotels, restaurants, department stores, clothing stores, gas stations, and so on. All the traveler's checks listed were negotiated and signed by Mr. Johnson. The record further indicates that embezzled funds also went into petitioners' joint bank account and used to make their mortgage payments. There is no evidence, however, to suggest *263 that Mrs. Johnson received any benefit from her husband's omitted income beyond normal support. We find that there was no unusual support or transfers of property to Mrs. Johnson that would constitute a significant benefit. Petitioner could have made the above-mentioned expenditures as well as the monthly mortgage payments from the income reported on petitioners' returns. Accordingly, we find that Mrs. Johnson has satisfied this final element, and, therefore, is entitled to innocent spouse relief for the taxable years 1983 and 1984. To reflect the foregoing, Decision will be entered under Rule 155.