T.C. Memo. 2018-167

UNITED STATES TAX COURT

KATUCHA J. DORVAL AND ROMANE G. DORVAL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17307-15.                    Filed October 1, 2018.

Katucha J. Dorval and Romane G. Dorval, pro sese.

<u>Derek P. Richman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  In a notice of deficiency dated March 31, 2015, respondent

determined the following deficiencies and penalties:[1]

_____

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect for the years at issue.  Rule

(continued...)

[*2]

| Year | Deficiency | Penalty sec. 6663(a) |
|------|------------|----------------------|
| 2010 | $17,780 | $7,370 |
| 2011 | 37,367 | 23,294 |
| 2012 | 23,911 | 15,716 |

The issues for decision are: (1) whether petitioners had unreported taxable income for the 2010, 2011, and 2012 tax years; (2) whether petitioners are entitled to deduct expenses reported on Schedules C, Profit or Loss From Business, for the 2010, 2011, and 2012 tax years; (3) whether petitioners are entitled to deduct expenses related to their rental activity in 2010; (4) whether petitioners are entitled to American Opportunity credits for the 2010, 2011, and 2012 tax years; (5) whether petitioners are liable for self-employment taxes for the 2010, 2011, and 2012 tax years; and (6) whether petitioner Romane Dorval is liable for civil fraud penalties under section 6663 for the 2010, 2011, and 2012 tax years.

FINDINGS OF FACT

Petitioners resided in Florida when they timely filed their petition. On August 27, 2015, respondent filed an answer alleging the facts on which he relied to support his determination of the deficiencies and penalties for the years at issue.

---

[1](...continued) references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[\*3]** Petitioners did not file a reply to respondent's answer. On October 29, 2015, respondent filed a motion under Rule 37(c) for an order that the undenied allegations in his answer be deemed admitted. In their response to respondent's motion, petitioners failed to respond with specific admissions or denials to the allegations in respondent's answer. See Rule 37(b). In a letter seeking additional time to respond, Mr. Dorval instead stated his general disagreement with respondent's answer in its entirety, claimed that he had filed his returns, and broadly asserted that he did not earn the amount of income respondent determined.

The Court ordered petitioners to file a proper reply in accordance with Rule 37(a) and (b), but petitioners failed to comply with the Order even after we granted additional time. As petitioners failed to respond to the substance of the affirmative allegations, the Court granted respondent's motion and deemed admitted the undenied allegations of fact in respondent's answer. See Rule 37(c); Doncaster v. Commissioner, 77 T.C. 334, 335-337 (1981). In respondent's pretrial memorandum and again at trial, counsel for respondent stated that he intended to rely on those admissions. At trial we asked Mr. Dorval repeatedly why he did not respond to the Court's order. He responded only that the Internal Revenue Service (IRS) already had the evidence he was offering. In any event, we find that

**[*4]** petitioners did not offer any credible evidence that would contradict the admissions or prompt us to vacate our prior order that deemed them admitted.

We therefore adopt those admissions, as well as the facts that the parties have stipulated, as our own findings and incorporate them herein by this reference. See Vogt v. Commissioner, T.C. Memo. 2007-209, 2007 WL 2198381, aff'd, 336 F. App'x 758 (9th Cir. 2009).

I.  Background on Petitioners and Tax Return Preparation Business

Petitioner Romane Dorval is a licensed realtor.  During the tax years at issue Mr. Dorval worked as a tax return preparer, having received Federal income tax training from Jackson Hewitt Tax Service, Inc., and Mrs. Dorval worked as a nurse.  In 2010 Mr. Dorval opened a tax return preparation business with his brother, Dr. Michel Dorval.  The business--Dorval Taxes, LLC, later Dorval Taxes & Accounting, LLC--employed one tax return preparer, David Newberg.  Mr. Dorval was issued a preparer tax identification number to enable him to prepare income tax returns for compensation.  Mr. Dorval prepared some income tax returns for clients of his return preparation business in 2011 but not in 2010. However, Mr. Newberg used Mr. Dorval's electronic filing identification number to prepare returns in 2010.

**[\*5]** Petitioners had several bank accounts during the taxable years at issue; the record includes bank account records from five accounts with JPMorgan Chase Bank (Chase) and three accounts with Wells Fargo (previously Wachovia). Mr. Dorval and Dr. Dorval were signatories for the Chase accounts ending in 6855 and 7788, and Dorval Taxes, LLC, was the designated account title or depositor. Petitioners--but not Dr. Dorval--were signatories for the Chase accounts ending in 2430 and 3075, and Dorval Taxes & Accounting, LLC, was the designated account title or depositor. The business address was used for those four Chase accounts. A fifth Chase account, ending in 6231, was a personal account held in petitioners' names, and petitioners' home address was used. Two Wells Fargo accounts also were held in petitioners' names, and one was held only in Mrs. Dorval's name. Petitioners' home address was used for all three of those accounts.

The business bank statements show various charges at Wal-Mart, at fast food restaurants, and for gas and other items. In 2010 Mr. Dorval cashed checks drawn on Dr. Dorval's personal bank account made out to cash or to Mr. Dorval, and endorsed by Mr. Dorval.[2]

---

[2] Mr. Dorval asserted at trial that payments Dr. Dorval made to him were reimbursements of expenses. He did not call Dr. Dorval to testify, and we found his testimony to be unsupported by the record.

**[\*6]**  Mrs. Dorval failed to appear at trial.[3]  The morning before trial Mr. Dorval provided respondent's counsel with documents he intended to present.  The documents included carbon copies of checks, check registers, a handwritten list of expenses, and copies of invoices that Mr. Dorval claimed detailed his business expenses.

## II.  Petitioners' Joint Income Tax Returns

Petitioners filed joint Forms 1040, U.S. Individual Income Tax Return, for the 2010, 2011, and 2012 tax years.[4]

Petitioners attached Schedules C to their 2010, 2011, and 2012 Forms 1040.  Petitioners attached two Schedules C to their 2010 Form 1040--one for Mr. Dorval's business activities listing "Realtor/Self Employe[d]" as his principal business or profession, and the other for Mrs. Dorval's business activities listing "LPN/Nurses" as her principal business or profession.  The Schedule C for Mr.

---

[3] As a result of Mrs. Dorval's failure to sign the stipulations of fact or appear, we find that she is in default and hold that she is bound by the outcome of this case.  See Rule 123(a) (stating that any party failing "to plead or otherwise proceed as provided by these Rules or as required by the Court * * * may be held in default by the Court"); Rule 149(a) ("The unexcused absence of a party or a party's counsel when a case is called for trial will not be ground for delay.  The case may be dismissed for failure properly to prosecute, or the trial may proceed and the case be regarded as submitted on the part of the absent party or parties.").

[4] The Forms 1040 indicate, and we find, that Mr. Dorval prepared petitioners' income tax returns for the tax years at issue.

**[*7]** Dorval's business activities reported $4,000 of gross receipts and claimed deductions for the following expenses: $2,288 for car and truck expenses, $45 for taxes and licenses, and $5,108 for other expenses (consisting of $2,013 for "Upkeep/Tools", $2,055 for "Suits/Clothes/Shoes", and $1,040 for "Dry Cleaners"). The Schedule C for Mrs. Dorval's business activities reported no income or gross receipts but claimed deductions for the following expenses: $2,016 for car and truck expenses, $150 for taxes and licenses, and $4,866 for other expenses (consisting of $2,011 for "Upke[e]p/Tools", $2,015 for "Clothes/Uniforms/Shoes", and $840 for "Dry Cleaners"). No Schedule C for the tax preparation business was attached to petitioners' 2010 Form 1040.

Petitioners reported $8,500 of gross receipts related to Mr. Dorval's business activities as "Realtor/Self Employe[d]" on their 2011 Schedule C. Petitioners also claimed deductions for the following expenses related to Mr. Dorval's business activities on their 2011 Schedule C: $200 for advertising, $3,112 for car and truck expenses, $140 for taxes and licenses, $2,311 for meals and entertainment, and $5,059 for other expenses (consisting of $2,044 for "Upkeep/Tools", $2,095 for "Suits/Clothes/Shoes", and $920 for "Dry Cleaners"). No Schedules C for Mrs. Dorval's business activities or Mr. Dorval's tax preparation business were attached to petitioners' 2011 Form 1040.

**[\*8]**  Only in 2012 did petitioners file a Schedule C for Dorval Taxes & Accounting, LLC.  That Schedule C reported $8,000 of gross receipts and claimed deductions for the following expenses:  $250 for advertising, $1,300 for meals and entertainment, and $1,919 for other expenses (consisting of $1,244 for "Suits Clothing Shoes" and $675 for "Dry Cleaners").

Petitioners also attached Schedule E, Supplemental Income and Loss, to their 2010 Form 1040.  Petitioners claimed deductions for the following expenses related to their rental activity:  $575 for cleaning and maintenance, $9,013 for mortgage interest, and $1,223 for supplies.

Petitioners attached Forms 8863, Education Credits (American Opportunity and Lifetime Learning Credits), to their 2010, 2011, and 2012 Forms 1040.  On their Forms 8863, petitioners claimed refundable American Opportunity Credits of $1,901, $1,893, and $1,000 for tax years 2010, 2011, and 2012, respectively.  Petitioners claimed nonrefundable education credits of $393, $818, and $1,174 for tax years 2010, 2011, and 2012, respectively.

Neither Dorval Taxes, LLC, nor Dorval Taxes & Accounting, LLC, has ever filed a Federal income tax return, although, as we described above, petitioners did attach a Schedule C listing Dorval Taxes & Accounting, LLC, to their 2012 Form 1040.  At trial Mr. Dorval offered unsigned copies of Forms 1120, U.S.

[*9] Corporation Income Tax Return, for Dorval Taxes, LLC, for the 2010 and 2011 tax years and carbon copies of checks made out to the IRS in the amounts shown as owed on the Forms 1120:  $46 for 2010 and $561 for 2011.  The record includes copies of bank statements showing that these checks were cashed, and copies of two U.S. Treasury checks made out to Dorval Taxes, LLC:  one for $46 and the other for $561.  An IRS computer printout shows that no Form 1120 was filed for either 2010 or 2011.

## III.  Bank Deposits Analysis

Respondent performed a bank deposits analysis for 2010, 2011, and 2012 using bank account statements from petitioners' accounts described above. Respondent determined that petitioners' deposits totaled $74,960 for the 2010 tax year, $136,074 for the 2011 tax year, and $112,459 for the 2012 tax year. Respondent then excluded wages, rental income, and unemployment compensation.  Next, respondent added amounts that petitioners withdrew from deposited checks and an amount petitioners received as compensation for Mr. Dorval's tax preparation work but did not deposit into their bank accounts.  Using this analysis, respondent determined that petitioners had unreported gross receipts of $30,484 for the 2010 tax year, $95,634 for the 2011 tax year, and $70,674 for the 2012 tax year related to Mr. Dorval's business activities.

**[\*10]** IV.  Penalty Approval

Finally, the record includes a completed Civil Penalty Approval Form for a section 6663 fraud penalty.  The form includes a signature on the line provided on the form for "Group Manager Approval to Assess Penalties Identified Above" dated December 16, 2014.[5]

OPINION

I.  Burden of Proof

The taxpayer generally has the burden of proving that the Commissioner's determinations in a notice of deficiency are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The burden of proof may shift from the taxpayer to the Commissioner in certain circumstances under section 7491(a).  Petitioners have not claimed or shown that they meet the requirements of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

II.  Unreported Income

Section 61(a) provides that gross income includes "all income from whatever source derived".  See Commissioner v. Glenshaw Glass Co., 348 U.S.

---

[5] As explained infra pp. 14-18, we are reopening the record to admit the Civil Penalty Approval Form and a declaration of IRS Revenue Agent Luis Ruiz insofar as it authenticates the Civil Penalty Approval Form for purposes of Fed. R. Evid. 902(11).

**[\*11]** 426, 430 (1955).  Taxpayers are responsible for maintaining adequate books and records sufficient to establish their income.  See sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

While Mr. Dorval asserted at trial that respondent's determination of additional gross receipts is incorrect, he did not offer any credible evidence to contradict petitioners' deemed admissions.  We hold, consistent with those admissions, that petitioners underreported gross receipts from his business activities in the amounts of $30,484, $95,634, and $70,674, respectively.

## III.  Deductions

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers, therefore, are required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability.  Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001).

We hold that petitioners overstated expenses on their 2010, 2011, and 2012 Schedules C in the amounts of $14,473, $10,822, and $3,469, respectively, and overstated expenses on their 2010 Schedule E by $10,811, consistent with their

[*12] deemed admissions.  Mr. Dorval's testimony was not credible, and petitioners' late-produced evidence generally was not reliable and did not undermine their deemed admissions.

## IV.  American Opportunity Credit

Tax credits also are a matter of legislative grace, and a taxpayer bears the burden of proving his or her entitlement to a claimed tax credit.  See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. at 440.  The American Opportunity Credit--a modified version of the Hope Scholarship Credit--provides for a credit against tax equal to "(A) 100 percent of so much of the qualified tuition and related expenses paid by the taxpayer during the taxable year * * * as does not exceed $2,000, plus (B) 25 percent of such expenses so paid as exceeds $2,000 but does not exceed $4,000."  Sec. 25A(i)(1).

We hold, on the basis of their deemed admissions, that petitioners are not entitled to the American Opportunity Credit for any of the tax years at issue.

## V.  Self-Employment Tax

We next must determine whether petitioners' income is subject to self-employment tax.  Section 1401 imposes a percentage tax on self-employment income, defined as the "net earnings from self-employment derived by an individual * * * during any taxable year" in section 1402(b).  Net earnings from

**[\*13]** self-employment are defined as "gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business". Sec. 1402(a); see sec. 1.1402(a)-1, Income Tax Regs.

Respondent asserts that petitioners are liable for self-employment taxes of $4,872 for the 2010 tax year, $12,790 for the 2011 tax year, and $9,663 for the 2012 tax year. Petitioners have not shown that respondent's determinations with respect to the self-employment taxes are incorrect. Indeed, they filed Schedules C for their trade or business activities not just for the tax preparation business.

We hold, therefore, that petitioners are liable for self-employment taxes for the taxable years at issue.

## VI. Section 6663 Fraud Penalty

Finally, as we determined that underpayments of tax exist for the taxable years at issue, we must determine whether Mr. Dorval is liable for section 6663 fraud penalties.

### A. Section 6751

The Commissioner first must show that he complied with the procedural requirements of section 6751(b)(1). Graev v. Commissioner (Graev III), 149 T.C. __, __ (slip op. at 13-14) (Dec. 20, 2017), supplementing and overruling in part

**[\*14]** <u>Graev v. Commissioner</u> (<u>Graev II</u>), 147 T.C. 460 (2016); <u>Katz v. Commissioner</u>, 90 T.C. 1130, 1143 (1988).  Section 6751(b)(1) requires the Commissioner to show that certain penalties were "personally approved (in writing) by the immediate supervisor of the individual making such determination".  <u>See</u> <u>Graev III</u>, 149 T.C. at __ (slip op. at 13-14).

We initially must determine whether respondent has satisfied the section 6751(b) procedural requirements for imposing the section 6663(a) fraud penalties. Trial of this case was held, and the record was closed, before the issuance of our Opinion in <u>Graev III</u>, which overruled in part our decision in <u>Graev II</u> and held that the Commissioner's burden of production under section 7491(c) includes showing supervisory approval as required by section 6751(b).  In light of the Court's decision in <u>Graev III</u>, we ordered respondent to file a response addressing the effect of section 6751(b) on this case and directing the Court to any evidence of section 6751(b) supervisory approval in the record, and petitioners to respond. Respondent was unable to direct the Court to any evidence in the record that satisfies his burden of production with respect to section 6751(b)(1) and filed a motion to reopen the record to include a completed Civil Penalty Approval Form dated before the issuance of the notice of deficiency, along with a declaration by the revenue agent who recommended the penalty.  Respondent's Civil Penalty

[*15] Approval Form evinces approval for the section 6663 fraud penalties imposed. Petitioners objected to the granting of respondent's motion but did not respond to our order asking them to explain why. Rather, in a letter to the Court, petitioners reiterated that they had cooperated with the IRS and did not commit fraud or negligence.

The decision to reopen the record to admit additional evidence is within our broad discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331-332 (1971); see Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 363 (9th Cir. 1974) (holding that "the Tax Court's ruling [denying a motion to reopen the record] is not subject to review except upon a demonstration of extraordinary circumstances which reveal a clear abuse of discretion"), aff'g T.C. Memo. 1971-200; Herndon v. Commissioner, 175 F.2d 55, 57 (5th Cir. 1949) (applying an abuse of discretion standard to review the Tax Court's decision to deny the taxpayer's motion to reopen the record). We "will not grant a motion to reopen the record unless, among other requirements, the evidence relied on is not merely cumulative or impeaching, the evidence is material to the issues involved, and the evidence probably would change the outcome of the case." Butler v. Commissioner, 114 T.C. 276, 287 (2000); see also SEC v. Rogers, 790 F.2d 1450, 1460 (9th Cir. 1986) (explaining that the trial court "should take into account, in

**[\*16]** considering a motion to hold open the trial record, the character of the additional * * * [evidence] and the effect of granting the motion"); Coleman v. Commissioner, T.C. Memo. 1989-248, aff'd sub nom. Meisel v. Commissioner, 991 F.2d 795 (6th Cir. 1993).

In reviewing motions to reopen the record, courts have considered when the moving party knew that a fact was disputed, whether the evidentiary issue was foreseeable, and whether the moving party had a reason for the failure to produce the evidence earlier.  See George v. Commissioner, 844 F.2d 225, 229-230 (5th Cir. 1988) (holding that refusal to reopen the record was not an abuse of discretion because the issue was foreseeable and the court could see no excuse for failure to produce evidence earlier), aff'g Frink v. Commissioner, T.C. Memo. 1984-669; Marshall v. Commissioner, 240 F.2d 185, 188 (5th Cir. 1957) (holding that the Tax Court did not abuse its discretion in denying the taxpayer's motion for rehearing to, in part, introduce new evidence where "there was not sufficient showing that * * * [the evidence] could not have been made available by the exercise of due diligence"), aff'g T.C. Memo. 1955-237.  For example, in Stivers v. Commissioner, 360 F.2d 35, 40 (6th Cir. 1966), vacating and remanding T.C. Memo. 1964-165, the court concluded that the record should be reopened to introduce evidence that was available at trial because "the taxpayers were justified

**[\*17]** in concluding that introduction \* \* \* was not necessary in the absence of some factual challenge by the Commissioner."

We also balance the moving party's diligence against the possible prejudice to the nonmoving party. In particular we consider whether reopening the record after trial would prevent the nonmoving party from examining and questioning the evidence as it would have during the proceeding. Estate of Freedman v. Commissioner, T.C. Memo. 2007-61, 2007 WL 831802, at \*12; Megibow v. Commissioner, T.C. Memo. 2004-41, 2004 WL 309153, at \*7.

We agree with respondent that the evidence is not cumulative, is material to the penalty issue in this case, and probably would change the outcome. See Butler v. Commissioner, 114 T.C. at 287. Reopening the record here serves the interests of justice because the record was closed in this case before we issued Graev III and because petitioners never raised section 6751(b) as an issue before the record closed. We also agree with respondent that the Civil Penalty Approval Form is a record kept in the ordinary course of a business activity and is authenticated by the declaration. See Fed. R. Evid. 803(6), 902(11). It is the type of evidence we routinely admit at trial solely on the basis of such a declaration. Petitioners did not raise any questions about its authenticity or otherwise indicate how they might

**[\*18]** be prejudiced if we admitted the form now without giving them a chance to examine and question the evidence as they would have during trial.

For the reasons stated above, we believe that justice favors our exercise of our discretion to reopen the record. We therefore will admit the Civil Penalty Approval Form into evidence. On the basis of that form, we also hold that respondent has satisfied his burden of production pursuant to section 6751(b)(1) with respect to the section 6663 fraud penalty. Compare Yaryan v. Commissioner, T.C. Memo. 2018-129, at \*44-\*46 (holding that the Commissioner satisfied his burden of production with respect to section 6751(b)), with Azam v. Commissioner, T.C. Memo. 2018-72, at \*29 (holding that the Commissioner did not carry his section 6751(b) burden).

B. Section 6663 Fraud Penalty

Fraud is an intentional wrongdoing on the part of a taxpayer with the specific purpose to evade a tax believed to be owed. Sadler v. Commissioner, 113 T.C. 99, 102 (1999). The fraud penalty is a civil sanction provided primarily as a safeguard for protection of revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938); Sadler v. Commissioner, 113 T.C. at 102.

**[\*19]** The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To do so, the Commissioner must prove that an underpayment exists and that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes known or believed to be owing. See Katz v. Commissioner, 90 T.C. at 1143. If the Commissioner establishes that any portion of the underpayment is attributable to fraud, the entire underpayment shall be attributable to fraud and subject to a 75% penalty, except with respect to any portion that the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud. Sec. 6663(a) and (b).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992). Fraud may be proved by circumstantial evidence and inferences drawn from the facts because direct proof of a taxpayer's intent rarely is available. Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. DiLeo v. Commissioner, 96 T.C. at 874; Stone v. Commissioner, 56 T.C. 213, 224 (1971). Fraudulent intent may be inferred from various kinds of circumstantial evidence, or "badges of fraud". Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601.

[*20] Courts have developed a nonexclusive list of factors that demonstrate fraudulent intent. These badges of fraud include: (1) understating income, (2) maintaining inadequate records, (3) failing to file tax returns, (4) giving implausible or inconsistent explanations of behavior, (5) concealing assets, (6) failing to cooperate with tax authorities, (7) engaging in illegal activities, (8) attempting to conceal illegal activities, (9) dealing in cash, and (10) failing to make estimated payments. See, e.g., Spies v. United States, 317 U.S. 492, 499 (1943); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); see also McGraw v. Commissioner, 384 F.3d 965, 971 (8th Cir. 2004) (citing Spies, 317 U.S. at 499, and Bradford v. Commissioner, 796 F.2d at 307-308), aff'g Butler v. Commissioner, T.C. Memo. 2002-314.

We have held that the Commissioner may satisfy his burden of proving liability for the fraud penalty with deemed admissions. See Smith v. Commissioner, 91 T.C. 1049, 1052-1053 (1988), aff'd, 926 F.2d 1470 (6th Cir. 1991); Marshall v. Commissioner, 85 T.C. 267 (1985).

Petitioners are deemed to have admitted the following facts relevant to our analysis. "Petitioners underreported on their federal income tax returns for tax years 2010, 2011, and 2012 gross receipts from the business activities of petitioner Romane G. Dorval in the amounts of $30,484.00, $95,634.00, and $70,674.00,

[*21] respectively." They "engaged in a pattern of underreporting the gross receipts of the business activities of petitioner Romane G. Dorval for at least three consecutive years." They "overstated expenses on Schedules C to their 2010, 2011, and 2012 federal income tax returns in the amounts of $14,473.00, $10,822.00, and $3,469.00, respectively", and "overstated expenses on Schedule E to their 2010 federal income tax return in the amount of $10,811.00." They also "claimed education credits to which they were not entitled on their 2010, 2011, and 2012 federal income tax returns."

Mr. Dorval filed the Forms 1040 at issue "fraudulently and with the intent to evade taxes for the tax years 2010, 2011, and 2012". He did not cooperate with respondent's agent during the examination of petitioners' joint Forms 1040 for the tax years at issue and failed to produce the documents respondent's agent requested during the examination. His "failure to maintain complete and accurate records of his income producing activities," his "failure to produce complete and accurate records to respondent," and his failure to cooperate were "fraudulent with intent to evade tax" and his explanations during the examination were "implausible or inconsistent". And his actions "constitute[d] intentional wrongdoing * * * motivated by a specific purpose to evade tax known or believed to be owing."

**[*22]** Even were we to disregard the conclusory allegations of fraudulent intent to which petitioners admitted by failing to file a reply as ordered, the undisputed facts would constitute clear and convincing evidence of fraud in this case. We are unconvinced by Mr. Dorval's testimony and petitioners' general denials. We therefore hold that respondent has satisfied his burden of proof and that Mr. Dorval is liable for the section 6663 civil fraud penalty for the tax years at issue.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued,</u>

<u>and decision will be entered for respondent</u>.